SCHWARTZ (UNITED STATES v.). See Case No. 16,237.

---

## Case No. 12,505.

SCHWARTZ et al. v. UNITED STATES INS. CO.

[3 Wash. C. C. 170.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1812.

MARINE INSURANCE — ACTION FOR RETURN OF PREMIUM—FRAUD IN PROCURING INSURANCE.

1. Action for a return of premium, on the insurance of the cargo of the Margaret, at and from Batavia to Baltimore.

2. Fraud is an answer to an action for a return of premium, not from any merit in the defendant, which justifies him in retaining money, which ex æquo et bono. is not his, but from the demerit of the plaintiff, which excludes him from the aid of a court, to draw it out of the defendant's hands.

[Cited in The Ann C. Pratt. Case No. 409.]

3. The court is not disposed to make nice distinctions between grades of fraud. The true rule is, that if the insured, by deception and false pretences, induces others to take a risk,

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

which, had the truth been disclosed, they would have refused, or would have taken on different terms, thereby securing to himself a chance to claim an indemnity in case of loss, or a return premium in case of safe arrival; it is such a fraud as ought to defeat his claim to a return of premium.

[Cited in Tufts v. Tufts, Case No. 14,233.]

Action for a return of premium, paid on a policy effected on the cargo of the Margaret, 20th of January, 1807, at and from Batavia to Baltimore, at 7½ per cent.; valued at 15,000 dollars; the coffee valued at thirty-four dollars per picul, the sugar fifteen dollars, and the pepper at twenty dollars. This is the same voyage as that mentioned in the case of the same plaintiffs against the Insurance Company of North America [Case No. 12,504], and the same evidence was given. The plaintiffs had insured on the cargo of this vessel, at other offices, to the amount of 75,500 dollars, prior to the one in question; and their interest on board, distinct from Arnold's, amounting only to 52,536 dollars, this suit is brought to recover back the premium, on the ground of short interest. The evidence not noticed in the report of the former case, but which becomes important in this, is as follows:

By the letters written by Captain Herd to the plaintiffs, from Batavia, and which were received two days before the first insurance on either vessel or cargo was made, the plaintiffs were informed that the cargo, on their account, would amount to upwards of 50,000 dollars, besides a conditional contract he had made with the Dutch government, for 1,000 piculs more of coffee; and they were advised by him to insure about 75,000 dollars on the cargo. After Herd had nearly taken in the greatest part of his cargo, he found the vessel had sprung a leak, which compelled him to unload, and to caulk and sheath, and put other repairs on her, which cost about 10,000 dollars. It was about that time, that Arnold became interested in the cargo; and the contract mentioned in the former case was entered into. Herd, in his deposition, swears, that he never gave to the plaintiffs, any information respecting the interest of Arnold in the cargo, or which contradicted his letters; which represented the whole cargo as belonging to the plaintiffs; until July, 1807, after his capture, in which last letter he unfolded the whole nature of the transaction. This letter was received by the plaintiffs on the 30th of August, 1807, and a letter was immediately written to the agent of the plaintiffs, in this city, directing him to abandon, and to claim for a total loss. This was done on the 31st, and refused. Some time after this, the agent was authorized to offer a compromise to the different offices, to receive 75 per cent. of the whole sum insured, with a promise to furnish the necessary proofs of property and loss, as soon as they should be received from Barbadoes, where the condemnation took place. This was refused, unless the agent would oblige himself to repay the money, if it should

appear that the plaintiffs were not entitled to it; which was not acceded to. Actions were accordingly brought, and a total loss claimed, without any counts for a return of premium being inserted in the declaration. The interest of Arnold, and the scheme pursued for covering his interest, were not communicated by the plaintiffs to the underwriters, but came accidentally, and in some other way, to their knowledge.

The claim for a return of premium, was resisted upon the following grounds: (1) Fraud in the plaintiffs (who, it was contended, must have known of Arnold's interest in the cargo), in attempting to cover, and to insure belligerent property as neutral. (2) That if they did not know it, still, they are chargeable with the fraud of Captain Herd, their agent and attorney. (3) That the cargo having been on board, or nearly so, before the interest of Arnold commenced, the policy attached, the policy being at and from; and of course, no claim can be made for a return of premium, independent of the question of fraud. Upon the first and second points were cited Park, Ins. (4th Ed.) 214; 2 Marsh, Ins. 652; 1 Bin. 116; 3 Caines, 90; 2 Johns. Cas. 58; [Maybin v. Coulon] 4 Dall. [4 U. S.] 298; 2 Johns. Cas. 310. On the third point were cited 3 Johns. 1; Park, Ins. (Last Ed.) 299; 1 Marsh. Ins. 165, 840; 3 Johns. Cas. 10.

For the plaintiffs, the fact of the fraud was insisted not to be brought home to the plaintiffs; and if it were, the law was disputed. As to the third point, it was answered, that the vessel not being seaworthy to receive the cargo, according to the decisions in the cases cited by the defendants, the policy of course never attached, until after she was repaired, and the interest of Arnold commenced. As to the plaintiffs being chargeable with the fraud of Captain Herd, it was said, that his conduct amounted to barratry, upon the argument of the defendants, for which they are liable; and of course, they cannot urge that, as a reason against a recovery of the premium. Any gross malversation by the master, is barratry. 2 Camp. 149.

WASHINGTON, Circuit Justice (charging jury). This is an action for money had and received, to recover back the premium paid by the plaintiffs to the defendants, for short interest, in the cargo of the Margaret; the whole having been covered by policies, prior to that underwritten by the defendants. The ground of the action is, that the defendants were never exposed to the risk, against which they bound themselves to indemnify the plaintiffs, and for which they received the premium; and consequently, that they cannot, in conscience, retain it. The principle of this action is unquestionably founded in sound law. The answer to this demand is, that the plaintiffs have been guilty of a fraud, in procuring this insurance to be effected; and that no court will, in such a case, lend its aid to recover back the money paid for effectuating such a

purpose. Generally speaking, this too, is sound law. This is an equitable action, and the plaintiffs should derive their right to recover from pure sources. The title of the defendant, in such a case, to retain what he has received, and which, ex æquo et bono, is not his; does not arise from any merit in himself, but from the demerit of the plaintiff, which denies him a remedy to draw it out of the hands of the defendants. The alleged fraud consists in covering belligerent property by false papers, and insuring it as neutral. The first question, therefore, is a question of fact, for the decision of the jury; whether the plaintiffs were knowingly guilty of the imputed fraud. The second is a question of law, whether this is such a fraud, as ought to prevent the plaintiff from reclaiming in a court of justice, the premium which he has paid.

In ascertaining the fact, on which the law is to arise, you have direct evidence, opposed to that which is merely circumstantial. The former consists in the information given by Captain Herd to the plaintiffs, on which they appear to have acted; by which they were led to conclude, that the cargo was entirely their own, and about equal in value to the aggregate of the sum insured on it. The circumstances opposed to this positive proof are, the small capital carried from the Isle of France to Batavia; the knowledge which William M'Fadon, during his life a partner of the plaintiffs, had of the connexion with Arnold in the Tranquebar voyages; and some others of less weight. But it may be observed, that though Arnold might be willing to take a share in the short trading voyages from Batavia to Tranquebar, it by no means followed, that he would engage in a shipment to the United States; and at all events, as fraud is never to be presumed, the jury ought to be very well satisfied with the evidence offered to prove it, before they should believe it to have existed, especially when it is opposed by strong proofs to the contrary.

We wish it were in our power to speak as favourably of the conduct of the plaintiffs, after they received Captain Herd's letter, which contained a full and candid disclosure of the transactions at Batavia, in relation to the interest of Arnold in this cargo. Had they then communicated this information to the underwriters, it would, we think, have been very difficult to have brought home to the plaintiffs, a knowledge of, or concern in, this unfair transaction. But the demand which they made of a total loss on the whole sum insured; their offer to receive 75 per cent. of the whole, at a subsequent period, after they had more time for reflection; and their concealment of the truth from the defendants, until after they had by other means obtained a knowledge of it; these, if they do not so connect the plaintiffs with the transactions at Batavia, as to induce a belief that they had authorized, or knew of them, when these insurances were effected, do at least amount to an adoption and ratification of what was done by their agent;

which subjects them, in point of law, as much to the charge of fraud in the first instance, as if the fact was brought home to them by the clearest proof. This being the case, it becomes unnecessary to give any opinion on the second point made by the defendants' counsel.

The next inquiry is, whether this is such a fraud as ought to bar the plaintiffs' right of recovery? It is much to be wondered at, that only five cases are to be met with, in which this question has received a judicial decision. The cases of Whittingham v. Thornburgh, 2 Vern. 206, De Costa v. Scandret, 2 P. Wms. 170, and Wilson v. Ducket, 3 Burrows, 1361, in which the premium was decreed to be refunded, notwithstanding the fraud of the insured in obtaining the insurance, fall short of establishing the point for which the plaintiffs' counsel contend. In the two former, the insurers were plaintiffs in equity, seeking to set aside the policies on the ground of fraud; and since the insurers could not, in conscience, retain the premiums, no matter how great the demerit of the insured might be, a court of equity, governed by its own principles, could not relieve the insurers on other terms, than compelling them to disgorge that to which they had no equitable right, and placing the parties in the situation they were in, when the contract was entered into. The other case, though tried at law, was under a decree of the court of chancery, in which the insurers were complainants, and offered in their bill to repay the premium. The case of Tyler v. Horne, mentioned in Park, Ins. 218, which was decided at nisi prius, in 1785, since the Revolution, and is, of course, not authority in this court, establishes the doctrine, that, in a case of gross fraud, the insured cannot recover back the premium. Chapman v. Fraser, which was decided at a still later period, but in the king's bench, is so loosely stated in 2 Marsh. Ins. 652, that it is difficult to discover the precise principle which it establishes.

This court does not feel itself disposed to countenance a distinction between different grades of fraud, as affecting the right of the plaintiff, in actions of this kind. It is believed, that upon general principles of law, as well as of sound policy and morality, it may be safely laid down as a rule, that if the insured, by deception and false pretenses, induces others to undertake a risk, which, had the truth been disclosed, they would not have taken at all, or would have done so on different terms from those agreed upon, thereby securing to the insured a chance to claim an indemnity in case of loss, or a return of premium in case of safe arrival; it is such a fraud as ought to defeat his right to maintain this action, for the premium. That is precisely the present case. The plaintiffs had this chance, and it might in all probability have been realized, had this vessel been lost at sea, or the evidence of the real transaction been otherwise kept from public view. The bill of lading and invoice, the ordinary proofs of property and value, were sufficient to authorize a recovery

of the sums insured, or might have induced the underwriters to pay without a suit. If the jury think with the court on the facts of this case, their verdict ought to be for the defendants.

Verdict for defendants.