*A. M. Copeland, pro se.*

---

MARY F. FISHER *vs.* METROPOLITAN LIFE INSURANCE COMPANY.

Worcester.    October 2, 1893. — January 6, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Life Insurance — Husband and Wife — Evidence — Fraud — Action.*

In an action by a married woman to recover back the amount of premiums paid by her on a policy of insurance issued upon the life of her husband for her benefit, evidence is admissible to show that she signed his name, without his knowledge or consent, to the examination form on the back of the application for the policy, and that he did not know or consent to the insurance, which acts, by the rules of the insurance company to which the policy was subject, rendered it void.

The fact that a married woman deceived her husband, in concealing from him that she had procured a policy of insurance upon his life for her benefit, by signing his name to the examination form on the back of the application therefor, will not affect her right to recover back the amount of premiums paid by her to the insurance company, if she was innocent of any intention to evade the rules of the company which rendered the policy void.

If a married woman participates with the agent of an insurance company, with fraudulent intent, in procuring a policy of insurance upon the life of her husband for her benefit, by signing his name, without his knowledge or consent, to the examination form on the back of the application for the policy, which by the rules of the company to which the policy is subject renders it void, she cannot maintain an action against the company to recover back the amount of the premiums paid by her upon the policy.

CONTRACT, for money had and received. Trial in the Superior Court, before *Hopkins,* J., who allowed a bill of exceptions, in substance as follows.

The plaintiff offered evidence tending to show that one William Bannigan was the duly authorized agent of the defendant to solicit insurance; that Bannigan solicited James G. Fisher, the plaintiff's husband, to effect insurance upon his own life for the benefit of the plaintiff, which he refused to do; that afterwards Bannigan, without the knowledge of the husband, solicited the plaintiff to effect insurance upon her husband's life for her benefit; that, after several solicitations, she inquired of Bannigan if it could be effected without the knowledge and consent of her husband, and, if so, how it could be done; that Bannigan told her it could be done, that she could sign her husband's name without his knowledge, that Bannigan would bring a physician to her house ostensibly for a call, that the physician could then make the requisite certificate of examination of the subject of insurance, and then she could have the policy without the knowledge of her husband, and that the policy thus obtained would be a valid one; that subsequently, by a preconcerted plan between the plaintiff and Bannigan, the latter called at the plaintiff's house, in company with one J. A. Carroll, a physician, whom he introduced to her husband as a friend; that Carroll engaged in conversation with her husband, herself, and Bannigan upon different matters; that he made no physical examination of her husband, who was not informed that any examination was being made, and to whom nothing was said with reference to life insurance; that afterwards she signed her own name and also that of her husband, but without the knowledge or assent of the latter as to either signature, to an application for insurance in the defendant company, the husband's name being signed by·her to the examination form on the back of the application, which also contained the usual certificate of the examining physician signed by Carroll; that the application was delivered to Bannigan, who afterwards delivered to the plaintiff a policy of insurance upon the life of her husband in the sum of $500, payable to her in case of his death; and that Bannigan subsequently delivered to the plaintiff a book upon which receipts of money paid by her, from time to time, were acknowledged, and which contained " Extracts from the Rules, Regulations, etc. of the Company " to which the policy was subject, and the material parts of which were as

follows : " Under no circumstances can an application be written upon the life of a husband for the benefit of his wife, or upon a wife for her husband, or (a legal, insurable interest existing) upon the life of any person for another's benefit (children excepted), unless the life on which the policy is applied for fully understands and consents to the insurance, is examined by a physician of the company if the amount is over $200, or by an agent if under that sum, and unless the proposed insured personally signs the examination form on the back of the application, after the answers in said application are all recorded, and not otherwise.  Any policy obtained in violation of these rules will be null and void."

The plaintiff also offered evidence that she paid to duly authorized agents of the defendant, but without the knowledge or consent of her husband, the premiums stipulated for in the policy, until July, 1892, when she was first informed that the policy was invalid for want of the consent of her husband ; and that she then wrote a letter to the defendant's president as follows : " My husband James G. Fisher is insured under policy 5667412, and I have just found out that it is against the rules, and I could not collect anything as he does not know it.  Your agent told me it was all right, now they tell me I could not collect it but can get my money back.  It has been two years and four months. I write saying that I will like my money back ; the agent knew all the time my husband was ignorant of it, but told me I would get the insurance just the same.  Mr. Bannigan insured him, he was Ast. Superintendent at the time, please write immediately and let me know."  No reply was received to this letter, but afterwards a duly authorized agent of the defendant called upon the plaintiff and solicited her to continue her payments, which she refused to do ; and a demand was made for repayment to her of the money paid as premiums, with which the defendant refused to comply.

The defendant offered no evidence to control that of the plaintiff as to conversations with Bannigan, who was present at the trial, but did not testify ; but objected to so much of the evidence as tended to show that the plaintiff's husband did not sign the application, or know of the insurance or consent thereto. The judge admitted the evidence ; and the defendant excepted.

The defendant asked the judge to instruct the jury as follows: "1. If the plaintiff was guilty of forgery in writing her husband's name upon the application, and the defendant issued the policy in good faith, she cannot recover. 2. If the plaintiff was not guilty of forgery, but was guilty of fraud or collusion with Bannigan, and the defendant issued the policy in good faith, the plaintiff cannot recover. 3. The plaintiff having signed the application for insurance, she cannot set up her own fraud or unlawful collusion with Bannigan, in avoidance of the contract of insurance. 4. This plaintiff cannot set up the fraud of Bannigan, of which she was cognizant, or in which she participated. 5. If the defendant was the insurer upon this application in good faith, without notice of fraud or forgery, the defendant can avoid the policy, but in case the defendant did not avoid the policy, it would be valid."

The judge declined to give the instructions requested; and the defendant excepted, and also excepted to the following portions of the charge to the jury:

"I instruct you, as a general proposition of law, that if there had been misrepresentations made to her which induced her to make the contract with the company, then she had a right to rescind the contract when she discovered the fact of these misrepresentations having been made, and having thus rescinded the contract, and put the defendant in the condition it was before the making of the contract, then she would have the right, as matter of law, to recover the money she had paid in pursuance of the contract. She had the right to annul the contract, and, having annulled it, then you will observe that the defendant had among its funds money of hers, received from her, which in equity and good conscience it ought not to hold, but should pay it to her, provided she was induced to make the contract by misrepresentations on the part of the company.

"A principal is liable to third parties for whatever the agent does or says, whatever representations he makes, whatever fraud or wrong he commits, provided he acts within the scope of his apparent authority, and provided a liability would attach to the principal if he was in the place of the agent.

"So that we set out with this proposition, that the principal is bound by the act, fraud, or deceit of the agent, and by any

representation he may make, whether fraudulent or otherwise, provided they were within the scope of his employment.

" You will inquire, upon the evidence before you, whether it can be said that in making these statements the agent did act within the scope of his employment. The agent, upon the evidence as claimed by the plaintiff, was authorized to solicit insurance by the company, and in pursuance of that authority he was authorized to take the written application of persons seeking insurance, and forward the same to the company, and upon return of the policy to deliver the policy to the person insured, as the beneficiary of the policy. This was the business of the agent. Now, when it is said that he may bind his principal by any act within the scope of his authority or employment, it simply means any act done in conducting the business which he is authorized to do. The company appointed him to procure insurance, and whatever he did in undertaking to do that, in forwarding the end which he had in view, and which it had in view, was within the scope of his employment.

" It makes no difference, as to her right of recovery, whether or not she deceived her husband. The defendant corporation is not affected in any wise, neither is she affected in any wise in her legal rights, by any deceit practised by her as against her husband.

" Her claim is, not that she intended to deal fraudulently with him, or deal concerning him, but that, having in mind a benefit for herself and family, not committing a wrong against him, and in obedience to a suggestion on the part of the agent of the company, she undertook to effect an insurance upon his life when he was ignorant of the fact; that would not be a fraud upon the company which would prevent a recovery upon her part of the money which she paid to the company, under the circumstances disclosed by the plaintiff's evidence."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*W. A. Gile*, for the defendant.

*J. R. Thayer*, for the plaintiff.

FIELD, C. J.    If this were an action on the policy, it could not be maintained on the evidence appearing in the exceptions. *McCoy* v. *Metropolitan Ins. Co.* 133 Mass. 82.

If the plaintiff, in collusion with Bannigan, the defendant's agent, intended to cheat the company or practise a fraud upon it, then the money she has paid the company was paid in pursuance of this fraudulent intention, and she cannot recover it back; but if she was innocent of any fraudulent intent, and was deceived by Bannigan and induced by his fraudulent representations to make the application, then she could rescind the contract of insurance when she discovered the fraud, and recover back the amount of the premiums which she had paid. *Hedden* v. *Griffin,* 136 Mass. 229. The position of the defendant is, that it could avoid the policy, but that the plaintiff could not, and that, as the plaintiff after she found out that she could not enforce the policy paid no more premiums, but demanded back the amount of the premiums she had paid, the policy has become void by reason of the non-payment of the premium, and that therefore no action can be maintained to recover back the money paid. Under the rules of the company to which the policy was subject, the policy was void or voidable from the beginning, because the husband of the plaintiff did not sign the examination form on the back of the application, or know of or consent to the insurance. The evidence to prove this was properly admitted. The difficulty is in dealing with the instructions requested, and with the charge of the presiding justice. The first four instructions ought to have been given, if they be taken to mean that the plaintiff could not recover if she intended to defraud the company or knowingly participated in the fraudulent acts of Bannigan. The court declined to give these instructions, to which the defendant excepted, and also excepted to a portion of the charge to the jury. This portion of the charge relates to the effect of the misrepresentations of the agent, and to the plaintiff's right to rescind the contract, if the plaintiff was induced to make it by these misrepresentations. The instructions given upon the effect of the fact that she concealed what she had done from her husband are correct, if she was innocent of any intention to evade the rules of the company, and thus to obtain a policy from it which she knew it would not issue if it had known that her husband had not signed his name on the back of the application, and had not consented to the insurance. But it does not appear by the exceptions that any instructions

were given upon the effect of her participation in Bannigan's fraud, if she did participate in it. There are some indications in the part of the charge contained in the exceptions that the presiding justice regarded it as plain that, if she knowingly participated in Bannigan's fraud, she could not recover, and that the instructions set out in the exceptions were predicated upon the assumption that the jury should find that she was innocent of any fraudulent intent against the company, and was deceived and misled by the misrepresentations of its agent. It was, we think, competent for the jury, on the evidence, to find either that she was or was not innocent of any attempt to evade the rules of the company, and to procure from it a contract which she knew it would not have made if it had known that her husband had not signed the examination form on the back of the application, and had not consented to the insurance. Upon the whole, as it does not appear that the presiding justice gave any instructions upon the subject of the first four requests of the defendant, and as these were absolutely denied, we think that the exceptions should be sustained.    *So ordered.*