ARAMINTA H. TAYLOR v. GRAND LODGE A. O. U. W. OF MINNESOTA.[1]

December 15, 1905.

Nos. 14,483—(79).

**Insurance—Material Misstatement.**

A. made a written application for membership in a lodge, and therein stated that he was forty-four years of age. The laws of the order restricted the membership to persons who are under forty-five years of age at the time of their admission. Accompanying the application and as part thereof was a certificate, signed by the applicant, which contained the following language: "I certify that the answers made by me to the questions propounded by the medical examiner of lodge, which are attached to this application and form a part thereof, are true, and if it should hereafter appear that I have made false statements in any particular, notwithstanding in the meantime I may pay all my regular assessments, it is herein agreed upon my part, the said false statements and actions shall render null and void forever my beneficiary certificate to be hereafter issued upon the basis of this agreement and medical examiner's report attached to this application." A beneficiary certificate was issued to A. in 1893 and from that time until his death in 1903 all dues and assessments were regularly paid. After death the lodge learned for the first time from the proofs of death that when the application was made A. was more than forty-five years of age, and the trial court found that the statement that he was forty-four years of age was false and fraudulently made for the purpose of obtaining a membership in the lodge. After the lodge learned that there was a discrepancy between the statements contained in the application and the proofs of death, it suggested to the beneficiary that it would be well for her to select an attorney with whom negotiations could be carried on, and this was done. The assessments which had been paid were never returned, but the lodge was at all times willing to return same, and so notified the attorney for the beneficiary and administratrix. Upon these facts it is *held*:

1. That the understatement of his age by the applicant increased the risk and was material as a matter of law.

2. That the beneficiary certificate which was issued to the applicant was null and void ab initio.

3. That as the beneficiary certificate was obtained by actual fraud the lodge was under no legal obligation to return what had been paid as assessments before it could claim that the contract was not in force.

[1] Reported in 105 N. W. 408.

4. That the lodge was not estopped to claim that the beneficiary certificate was void, by its request that the beneficiary name some one with whom it could negotiate with reference to the claim.

5. That there is nothing in the facts and circumstances disclosed by this record to create an estoppel or show that the lodge waived its right to claim that the contract is void.

Action in the district court for Hennepin county to recover $2,000 upon a beneficiary certificate issued by defendant to Wilbur N. Taylor, payable in event of his death to plaintiff. The case was removed to the district court for Ramsey county and tried before Jaggard, J., who found in favor of defendant. From an order, Kelly, J., granting a motion for a new trial, defendant appealed. Reversed.

*W. H. Adams* and *E. Southworth,* for appellant.

*C. J. Bartleson* and *C. H. Rossman,* for respondent.

ELLIOTT, J.[2]

This is an appeal from an order vacating an order for judgment for the defendant and granting a new trial. The action was brought by the plaintiff to recover money claimed to be due from the defendant upon a beneficiary certificate issued by the defendant to Wilbur N. Taylor, the deceased, who at the time of his death was the husband of the plaintiff.

Prior to April 14, 1902, the defendant was a voluntary association of persons doing business under the name of the Grand Lodge of the Ancient Order of United Workmen of the State of Minnesota. On said April 14, 1902, the defendant was incorporated under that name, and ever since has been a corporation and liable upon any and all beneficiary certificates issued prior to the date of the incorporation by the Grand Lodge as a voluntary association. The defendant is a fraternal beneficial and benevolent society, organized for the promotion of the social and fraternal welfare of its members and for the protection of those who, pursuant to its laws are its beneficiaries. The general supervision and jurisdiction over the whole order rests in the Supreme Lodge. The Grand Lodges receive their power and authority from this Supreme Lodge, and have supervision and control over the order within certain territorial limits, with power and authority, subject to

[2] JAGGARD, J., having decided the case as district judge, took no part.

the approval of the Supreme Lodge, to adopt a constitution and by-laws for its own government and for the government of all subordinate lodges of the order within such territorial limits. The defendant Grand Lodge has jurisdiction within the territorial limits of the state of Minnesota, and under its authority subordinate lodges are organized, which are composed of individual members of the order. This Grand Lodge has the power to create, manage, and disburse a beneficiary fund and to issue beneficiary certificates to members of the order within its jurisdiction, pledging said fund to the payment of $2,000 to such person or persons as shall from time to time be designated to receive the same. The constitution and by-laws of the Grand Lodge, duly approved by the Supreme Lodge, which have been in force since September 28, 1893, and for some time prior thereto, provide that any person, to become a member of the order or be entitled to its benefits or profits, must be under the age of forty-five years at the time of receiving the workman degree of said order.

On September 28, 1893, Wilbur N. Taylor, the husband of the plaintiff herein, made a written application for membership and a beneficial certificate in one of the subordinate lodges organized under the authority of the defendant Grand Lodge. To this application there was attached a certificate, which was signed by Taylor, in which he certified that the answers and statements contained in the application were true and correct. The certificate, which was a part of the application, contained the following language:

> If it should hereafter appear that I have made false statements in any particular, notwithstanding in the meantime I may pay all my regular assessments, it is herein agreed upon my part, the said false statements and actions shall render null and void forever my beneficiary certificate, to be hereafter issued upon the basis of this agreement and medical examiner's report attached to this application.

In the application Mr. Taylor stated that he was born on December 2, 1849, and at the time of making the application was forty-four years of age. In due course Taylor was elected a member of the order and of the lodge, and passed through the various degrees which were necessary to qualify him for receiving the beneficiary certificate. Mr. Tay-

lor received the beneficiary certificate, and from the date thereof until his death paid all the assessments required of any member of the order. Mr. Taylor died on November 20, 1903, and on December 5, 1903, the beneficiary named in the certificate furnished proofs of his death, from which it appeared that Taylor had been born on December 2, 1846, instead of 1849, as stated in the application. This was the first notice the defendant had that Taylor had misstated his age in the application. It appears that the matter was then referred to the proper officer of the order, and on January 22, 1904, this officer wrote Mrs. Taylor, calling her attention to the fact that there appeared to be a material discrepancy between the statements of the age of Mr. Taylor as given by him in his application for membership and as given by her in the proofs of loss. He also informed her that the report of the matter would be made to the committee of finance of the Grand Lodge, which must first pass upon death claims, and suggested that she place her interests in the hands of

> Some person, attorney at law or otherwise, whom you have confidence in, that we may possibly reach some agreement upon the facts and the law governing the same. Our order desires at all times to do exact justice by its members and their beneficiaries, but I hesitate to put myself in the position of conducting negotiations directly with you, but prefer that the same be conducted for you by some one informed in the law of insurance.

Mrs. Taylor, apparently acting upon this suggestion, employed an attorney to look after her interests, and on April 12, 1904, one of the officers of the lodge notified this attorney in writing that

> The finance committee of the Grand Lodge at its recent meeting decided in their judgment that there was no liability under the beneficiary certificate of Wilbur N. Taylor, but that, without admitting any liability, they would be willing to refund to the widow of the deceased all amounts paid by Mr. Taylor to the Grand Lodge as assessments. This amount will be approximately $200.

Plaintiff declined to accept this proposition, and brought suit to recover the full amount of the beneficiary certificate. The trial court

found that the statement of Taylor, made in the application, as to his age, was knowingly false and untrue; that Taylor was at the time of the application in his forty-seventh year, and was therefore ineligible to membership in said lodge and not entitled to receive the beneficiary certificate; that the false statement was made for the purpose of procuring membership in the lodge and order, and for the purpose of procuring the beneficiary certificate; and ordered judgment for the defendant. The judge who made this order having gone out of office, a motion for a new trial was subsequently made before another judge, who granted a new trial upon the ground that the defendant had by its failure to properly tender back the money paid on assessments waived its right to avail itself of the defense that the certificate was obtained by fraud. The appeal is from this order.

1. There is no merit in the claim that the defendant waived its right to insist upon a forfeiture by the suggestion in the letter of January 22, 1904, that Mrs. Taylor should employ some one with whom the defendant might consult with reference to the discrepancies found to exist as to the age of Mr. Taylor. The rule that an insurance company, by demanding that the insured do some act which by the terms of the policy he is required to do upon demand of the insurer, is thereby estopped to claim a forfeiture upon grounds then known to it (Trippe v. Provident, 140 N. Y. 23, 35 N. E. 316; Granger v. Manchester, 119 Mich. 177, 77 N. W. 693; Titus v. Glen Falls, 81 N. Y. 410; Gibson v. Liverpool, 159 N. Y. 418, 54 N. E. 23), has no application upon the facts of this case. The officers of the lodge had no legal right under the certificate or the rules of the order to call upon the beneficiary named in the certificate to employ an attorney. The suggestion was evidently made in a friendly spirit, for the purpose of advancing the interests of all parties, and making easier and more satisfactory the investigation which was then contemplated. At that time the lodge had not refused to pay the amount claimed under the certificate. The correctness of the statement made by Mr. Taylor in the application as to his age had not yet been determined. It was a matter for further investigation. The lodge had been put upon inquiry by the conflicting statements which appeared in the application and the proofs of death. But it was still possible that the discrepancy was the result of an honest error and that it could be explained away. We are unable to see how

it can fairly be claimed that a mere suggestion of this character can be considered as a waiver on the part of the lodge of the right to avail itself of a material misrepresentation, which at that time had not been established even to the satisfaction of the lodge. The writing of this letter was perfectly consistent with an intention to elect to consider the certificate as forfeited, and furnished no basis for an estoppel. Fraser v. Ætna, 114 Wis. 510, 90 N. W. 476; Freedman v. Fire Assn., 168 Pa. St. 249, 32 Atl. 39; Boyd v. Insurance Co., 90 Tenn. 212, 16 S. W. 470; 4 Joyce, Ins. § 3376.

2. The understatement of his age by an applicant for life insurance increases the risk and is material as a matter of law. Dolan v. Mutual, 173 Mass. 197, 53 N. E. 398; Wiberg v. Minnesota S. R. Assn., 73 Minn. 297, 76 N. W. 37; Swett v. Citizens, 78 Me. 541, 7 Atl. 394; Ætna Life Ins. Co. v. France, 91 U. S. 510; Marcoux v. Society, 91 Me. 250, 39 Atl. 1027; Hartford v. Moore, 13 Tex. Civ. App. 644, 36 S. W. 146; McCarthy v. Catholic Knights, 102 Tenn. 345, 52 S. W. 142; United Brethren v. White, 100 Pa. St. 12; Lowe v. Union Central, 41 Oh. St. 273.

The contract between Taylor and the defendant contained a provision that it should be "null and void forever" if it appeared that Taylor had made false statements in his application. The word "void" has been given different meanings. A contract may be void in the sense of being illegal; that is, prohibited by law and incapable of ratification and enforcement. It may also in some connections be construed as merely meaning avoidable; that is, in force and effect until repudiated by the affirmative act of the party. But it may also be void in the sense of being merely ineffective, of no force and effect; and this is the meaning we attach to the words as used in this contract. The words "null and void" in such a connection do not require construction. All that is necessary is to take them in their natural and commonly accepted sense. Taylor secured his membership by false statements, and the beneficiary certificate which was issued to him never went into effect. It was simply null and void. But is was of such character that it could be revived by the lodge through its affirmative action, or become enforceable through the operation of the doctrine of waiver or estoppel. After the discovery of the fraud the lodge was not required to rescind the contract. It had merely to determine whether it would avail itself of the defense. John-

son v. American Ins. Co., 41 Minn. 396, 399, 43 N. W. 59; Fraser v. Ætna, supra; Insurance Co. v. Pyle, 44 Oh. St. 19, 4 N. E. 465.

The general rule with reference to the right of the insured to have the premiums returned is stated by Lord Mansfield in Tyrie v. Fletcher, Cowp. 666, in the following language: "Where the risk has not been run, whether its not having been run was owing to the fault, pleasure, or will of the insured or to any other cause, the premium shall be returned, because a policy of insurance is a contract of indemnity. The underwriter receives a premium for running the risk of indemnifying the insured, and whatever cause it be owing to, if he does not run the risk, the consideration for which the premium or money was put into his hands fails, and therefore he ought to return it." Although not expressly stated in all the cases which recognize the right to the return of the premium, there is a well-recognized exception by which the insurer is relieved from any duty to return the premium when it was induced to enter into the contract by the actual fraud of the insured. In this case the trial court found in substance that the untrue statement as to his age was knowingly made by the applicant for the fraudulent purpose of obtaining membership in the lodge. It was, then, a case of actual fraud, not a mere innocent or unintentional breach of warranty or conditions.

An examination of the English authorities shows that the exception to the general rule stated by Lord Mansfield is now as well established as the rule itself. It was for some time uncertain whether the English courts would recognize a right to the return of the premium when the contract was rendered void ab initio by the fraud of the insured. In Whittingham v. Thornburgh, 2 Vern. 206, De Costa v. Scandret, 2 P. Wm. 170, and Wilson v. Ducket, 3 Burr. 1361, the right to the return of the premium was recognized even in case of gross fraud. Miller, Elem. Ins. (1787) p. 531. But, as said by Marshall and repeated by Arnould: "The point, however, agreeable to truer notions of justice and to good policy, is now clearly established in our English jurisprudence that wherever the contract is void for gross and actual fraud on the part of the assured, whether committed by himself or his agent, there shall be no return of premium." 2 Marshall, Ins. p. 661; Chapman v. Fraser, 3 Park, Ins. 218. After citing the exceptions to the general rule, Arnould says: "There must, however, be

actual fraud on the part of the assured or his agents thus to preclude him from recovering back the premium; a mere misrepresentation, made without actual fraud (i. e., wilful intention to deceive), does not disentitle the assured to a return of premium." 2 Arnould, Marine Ins. (7th Ed.) § 1256. In Feise v. Parkinson, 4 Taunt. 640, 14 Eng. Rul. Cas. 530, Gibbs, J., said: "Where there is fraud there is no return of premium; but upon a mere misrepresentation, without fraud, where the risk never attached, there must be a return of premium." In Anderson v. Thornton, 8 Exch. 425, Baron Parke said: "With respect to the return of the premium there is no doubt in my mind that the plaintiffs would be entitled to recover it, as there was no fraud in the representation. If there had been, the case would be different." That the rule does not apply where there is actual fraud is also recognized in Henkle v. Royal, 1 Ves. 317 (per Lord Hardwicke); Long v. Allan, 4 Doug. 276, 14 Eng. Rul. Cas. 517; Colby v. Hunter, 3 Car. & P. 7; and Prince of Wales Assur. Co. v. Palmer, 25 Beav. 605. In a note to Feise v. Parkinson, 4 Taunt. 640, in 14 Eng. Rul. Cas. 530, the learned editor says that "in a case of fraud, however—that is to say, where the insured has personally made or authorized a representation, which is false to his knowledge, or been personally guilty of concealment of a material fact—there is no doubt that he is debarred from claiming return of premium."

Chancellor Kent says that "the premium paid by the insured is in consideration of the risk which the insurer assumes, and if the contract of insurance be void ab initio, or the risk has not been commenced, the insured is entitled to a return of premium. * * * The insurer retains the premium in all cases of actual fraud on the part of the insured or his agent." 3 Kent, Com. 341, citing Cours de Droit Commercial Maritime, iv. 98, 99. In a recent book on insurance it is said: "When the risk has never attached, the premium paid is always returnable, unless (a) the contract was rendered void ab initio by the fraud of the insured, or (b) the contract is illegal and the parties in pari delicto." After quoting the language of Lord Mansfield in Tyrie v. Fletcher, supra, the writer says: "The rule so stated, notwithstanding the eminent respectability of its origin, has not been accepted without qualification. Its terms are too broad. If the fault of the insured, to which the failure of the risk to attach was due, was wilful and

fraudulent, the insurer may nevertheless retain the premium; for the insured shall not profit by his own wrong.  If the policy was void from its inception by reason of the untruth of any representation or warranty, the right to have again his premiums depends solely upon the character of the misrepresentation.  If fraudulent, he cannot recover; but, if innocent, he may recover."  Vance, Ins. 241, 246.  May says that the contract of insurance "is, moreover, a conditional contract; for, when no risk attaches, no premium is to be paid, or, if paid, must, in the absence of fraud, be returned to the assured."  1 May, Ins. (3d Ed.) § 4.  See also 1 Wood, Ins. (2d Ed.) § 109; Angell, F. & L. Ins. (2d Ed.) § 404; 2 Joyce, Ins. § 1398; 2 Phillips, Ins. (5th Ed.) § 1841; 2 Marshall, Ins. 652; 1 Parsons, Mar. Ins. 560; 4 Current Law, 199; 2 Clement, Fire Ins. 538.

In Delavigne v. United Ins. Co., 1 Johns. Cas. 310, the court said: "Where a policy becomes void by a failure of the warranty, the insured is entitled to a return of the premium, if there be no actual fraud." Insurance Co. v. Pyle, 44 Oh. St. 19, 4 N. E. 465, was an action on a fire insurance policy.  It was held that the policy was void and of no effect from the moment it was issued, because of the untrue statements made in the application, but that the insured was entitled to recover back the premiums he had paid.  Mr. Justice Follett said: " The court thus held, not only because the policy was void ab initio, but because it also found 'that all of said questions so erroneously answered were answered by the plaintiff under an innocent misapprehension of the purport of the questions and the answers, and the answers that should have been made thereto, and without any intent to perpetrate a fraud of any kind upon the defendant.  There was no actual fraud, at least on the part of Pyle.  On this policy no risk ever attached.  * * * The rule is different where the risk has attached or there is actual fraud."  In Jones v. Insurance Co., 90 Tenn. 604, 18 S. W. 260, it was held that, where no risk has ever attached under a policy of fire insurance, the insurer must return the premium paid, provided the assured has been guilty of no fraud.  Lurton, J., said: "The contract of insurance is a conditional one.  If no risk attaches, no premium, in the absence of fraud, is earned.  Where the risk never attached and no risk was ever run, the premium is to be returned, in case it has been paid and the assured was guilty of no fraud."  In Himely v. South

96 M.—29

Carolina, 1 Mill, Const. (S. C.) 154, the policy was held invalid because there had been a concealment of facts necessary to the risk. The court said: "The fifth ground is that the policy was confirmed by the answer of the board that it would cover specie, and also by a refusal to return the premium. * * * When they refused to return the premium they had discovered the fraud, and therefore had a right to retain it. 'In all cases of actual fraud on the part of the insured, committed either by himself or his agent, the underwriter shall retain the premium.'"

The well-considered case of Blaeser v. Milwaukee, 37 Wis. 31, holds that such a contract is absolutely void. It was an action upon a policy of insurance on a building and its contents. The company defended on the ground that the plaintiff had fraudulently misrepresented the value of the property and had wrongfully caused the fire by which the property was destroyed. Justice Cole said: "There is another portion of the charge excepted to which we deem it proper and necessary to notice, which is where the court instructed the jury that, although there might be misrepresentations in the application, yet the company could not avail itself of them in an action upon the policy, without first tendering back to the insured the amount of premium paid. The learned circuit judge held upon this point that the rule in regard to the rescission of contracts for fraud was applicable; that, when a party seeks to avoid a contract on that ground, he must put the other party to the contract back to the condition in which he stood prior to the transaction. This is undoubtedly a well-settled rule in regard to the rescission of contracts; but we think it has no application to the case before us, and for this reason. By the condition of the policy itself, any fraudulent misrepresentations of fact material to the risk avoids the contract. It is not necessary that the company refund the premium in order to avail itself of this stipulation in the policy. The representations in the application constitute the basis upon which the risk is taken, and the policy declares that, if there is any misrepresentation or concealment, the insurance shall be void and of no effect. The company enters into the contract relying upon the truth of the representations, and if it has been misled or deceived upon matters material to the risk it may well say that no contract was ever made; that there was no concurrence of assent upon the same facts. In this case the insured declared that the

several representations made in the application by way of answer to the questions asked were 'made warranties,' by which he was bound; and we know of no case which holds that if the property is not as warranted, or there are fraudulent representations in a matter material to the risk, the company cannot avail itself of that defense unless it first tender back to the insured the premium paid.

"In Campbell v. New England, 98 Mass. 381, Justice Wells says: 'Representations to insurers, before or at the time of making a contract, are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract, its foundation, on the faith of which it is entered into. If wrongly presented in any respect material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented.' These remarks are sufficient to show that the position of the defendant in attempting to defeat the action on the ground that fraudulent representations were made in the application is essentially different from that held by a party who seeks to rescind a contract on the ground of fraud."

`In Thompson v. Travelers, 11 N. D. 274, 91 N. W. 75, the policy contained a. provision that it "shall not take effect unless the first premium is actually paid while the insured is in good health." After the application was sent to the company, and before the policy was delivered and the premium paid, the applicant contracted a disease from which he soon died. The company first learned of these facts when the proofs of death were received. No attempt was made to return the premiums. In an action on the policy the court said: "The case is not parallel as to its facts with one where the premium was paid by an insured upon a policy which the insurer is endeavoring to cancel through an action in a court of equity. In such a case, a return or an offer to return everything of value received under the policy must be made at or before the commencement of the action. * * * In this case the defendant is not seeking any affirmative relief. It seeks to establish that there never existed a policy of insurance in favor of the deceased in defendant's company, by reason of the fact that it was delivered under circumstances that by its own terms provided that it should not come into effect." American v. Antram, 86 Miss. 224, 38 South. 626.

Fisher v. Metropolitan, 160 Mass. 386, 35 N. E. 849, was an action

brought to recover back the amount of premiums paid on a life insurance policy. The plaintiff, the wife of the insured, participated with the agent of the insurance company with fraudulent intent in procuring a policy of insurance for her benefit upon the life of her husband. She signed his name without his knowledge and consent to the examination form on the back of the application for the policy, which by the rules of the company to which the policy was subject rendered it void. It was held that an action could not have been maintained upon the policy, and that if the plaintiff, in collusion with defendant's agent, intended to cheat the company or practice a fraud upon it, then the money she had paid the company was paid in pursuance to this fraudulent intention and could not be recovered back. See also Trabandt v. Connecticut, 131 Mass. 167; Hoyt v. Gilman, 8 Mass. 336; Friesmuth v. Agawam, 10 Cush. 587; Lewis v. Phœnix, 39 Conn. 100; Schwartz v. U. S. Ins. Co., 3 Wash. C. C. 170, Fed. Cas. No. 12,505; Hearne v. Marine Ins. Co., 20 Wall. 488.

. In· Georgia Home Ins. Co. v. Rosenfield, 95 Fed. 358, 37 C. C. A. 96, the question of the duty of an insurance company to return the premium is given very full consideration. In U. S. Life Ins. Co. v. Smith, 92 Fed. 503, 34 C. C. A. 506, it had been held by the same court that "the general rule is that, if a risk ·never attaches under a policy, the premium is not earned, and, if paid, may be recovered, unless the insured has been guilty of fraud." In reference to the Smith case Judge Lurton in the Rosenfield case (page 363) said: "It is true that the de-· cision of the case did not turn upon the absolute necessity of a previous tender, inasmuch as the court found that there had been an unequivocal repudiation of liability before the death of the assured upon the ground of breach of warranty, and that during the trial a tender back of the premium had been made and rejected. This we held was a sufficient offer to repay the premium, if the repayment could have been legally demanded. An action by the assured to recover the premiums paid, where the policy never attached and where no risk was run, will not lie when the contract was procured through the active fraud of the insured. This is well settled. * * * If a policy be void ab initio—that is, if the risk never attached and insurer was at no time subject to liability—and the contract was not against law or public morals, the insurer may· recover back all the premiums he may

have paid, provided there was no fraud upon the part of the insured [citing Foster v. United States, 11 Pick. 85, and Clark v. Manufacturers' Ins. Co., 2 Woodb. & M. 472, Fed. Cas. No. 2,829].  *  *  * The analogy between a suit for rescission upon the ground of fraud and reliance upon fraud as a defense, when it is sought to enforce a contract void for fraud, is not perfect."

The claim that a party who has by false and fraudulent representations secured membership in an order of this character has an absolute right to the return of the money 'which he has paid into its treasury upon the discovery of his fraud, to say the most, rests upon a very meager foundation of merit.  Such a rule is an invitation to fraud.  If all moneys thus voluntarily paid can be recovered or must be returned by the insurer as a condition precedent to pleading the fraud as a defense, a party who contemplates obtaining insurance by false representations may well feel that he is taking no chances of loss, but is entering upon a transaction in which he stands to gain large returns without any possibility of endangering his investment.  If the fraud is never discovered, the beneficiary under the policy which will be issued to him will receive the full benefit of the contract.  If it by chance is discovered, his estate will receive back all that has been paid by the guilty party, and the trouble and expense attending upon the transaction will be thrown upon the innocent party.  As the beneficiary certificate upon which this action is brought was obtained by fraud, the lodge was not required to return what it had received for assessments as a condition of availing itself of the right· to elect to treat the contract as void ab initio.  The widow of the party who had obtained membership by fraudulent representations had no just claim to the money, and certainly it was not due to the party named as beneficiary in the certificate.  Thompson v. Travelers, 11 N. D. 274, 91 N. W. 75.

The conclusion to which we have arrived is consistent with all the cases heretofore decided by this court.  The effect of the active fraud of the applicant for membership in an order such as the defendant or for a policy in an ordinary insurance company was not considered in Schreiber v. German-American Hail Ins. Co., 43 Minn. 367, 45 N. W. 708, or in any of the subsequent cases.  There is high authority for the view that the insured is not entitled to recover the premiums paid where there is a breach of conditions and no fraud (Austin v. Mutual Reserve

Fund Life Assn. (C. C.) 132 Fed. 555; Georgia Home Ins. Co. v. Rosenfield, supra); but we think that the weight of reason and authority is otherwise when the contract never went into effect. But it has never to our knowledge been held by this court that, even when there is no fraud on the part of the insured, the insurer is absolutely bound to seek the insured and return or make a technical tender of the premiums which have been voluntarily paid before the insurer acquired knowledge of the breach of condition.

In the Schreiber case Chief Justice Gilfillan states that the question is not there determined. This case and First Nat. Bank v. Manchester Fire Assur. Co., 64 Minn. 96, 66 N. W. 136, rest upon the act of ratification after knowledge of acts done by the insurer before it acquired knowledge of the right to defend against the contract, which was inconsistent with an intent to elect to repudiate the obligation. In Mee v. Bankers' Life Assn., 69 Minn. 210, 72 N. W. 74, it appeared that the insured clearly recognized the contract as in force after it had full knowledge of all the facts. The same is true of Perine v. Grand Lodge A. O. U. W., 48 Minn. 82, 50 N. W. 1022. In Wiberg v. Minn. S. R. Assn., 73 Minn. 297, 76 N. W. 37, the insurer collected an assessment and received the money after knowledge of the right to forfeit the contract for nonpayment of an assessment. First Nat. Bank v. Manchester Fire Assur. Co., supra, follows the Schreiber case, and there is nothing in the decision or the language of the court inconsistent with the rule that the question of waiver or election is one of intention. After the loss the insurer, in ignorance of the breach of conditions, had asserted its rights under the contract to certain salvage. No waiver could be based on this action (St. Paul F. & M. Ins. Co. v. Parsons, 47 Minn. 353, 50 N. W. 240); but it was held that after it had acquired knowledge it was bound to do all that it reasonably could to place the assured in its former position. The failure "to make any effort to do this" after it was fully advised of its rights was held to be an affirmance and ratification of its previous act of taking possession of the salvage.

Had there been no fraud on the part of the applicant, the lodge might have been required, upon demand, to return the amount paid by Taylor as assessments, because the permanent retention of this money would have been inconsistent with an honest intent to treat the contract as void. The retention of the money would imply that the in-

surer had been subject to some liability, and it might well have been argued that it conclusively showed that there had been an election to treat the contract as valid.   In the present case the acts and statements of the defendant showed beyond any reasonable doubt that the lodge intended to elect and did elect to exercise its right to avail itself of the breach of condition.   It certainly never did anything inconsistent with such an intention.   Mr. Taylor died November 20, 1903, and the proofs of death from which the lodge obtained its first intimation of fraud were furnished on December 3, 1903.   The letter to Mrs. Taylor, in which it is suggested that she place her interests in the hands of some representative, was sent on January 22, 1904.   On March 29, 1904, the committee on finance of the Grand Lodge disallowed the claim of the beneficiary and offered to return the money which had been contributed to the beneficiary fund.   On April 12 following the plaintiff's representative was notified that the lodge was willing to refund to the widow of the deceased all moneys which had been paid by Taylor to the Grand Lodge as assessments.

The fact that there was a condition attached is of no importance in this instance.   We are not considering a question of technical tender, but trying to ascertain whether the lodge did what was necessary to show that it made its election between two inconsistent courses of conduct.   The lodge refused to pay the death loss and expressed a willingness to return the amount of assessments paid, and this in itself is sufficient to show that there was no intention to waive the breach of conditions.   Fraser v. Ætna, 114 Wis. 510, 90 N. W. 476.   It thus manifested its election to treat the contract as not in force, and it did nothing upon which the plaintiff can predicate an estoppel.   The trial court was therefore correct in holding that there had been no waiver of the right to defend against the plaintiff's claim on the ground that it had been induced to accept Mr. Taylor as a member of the order and issue the beneficiary certificate to him by the fraudulent representation as to his age.

The order for judgment was therefore correct, and the order granting a new trial must be reversed.