## KATHRYN MAE DIGHT v. PALLADIUM LIFE INSURANCE COMPANY.[1]

November 12, 1937.

No. 31,365.

[1]Reported in 276 N. W. 3.

248

*J. A. A. Burnquist,* for appellant.
*Bessesen & Bessesen,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order of the municipal court of the city of Minneapolis denying defendant's motion for a new trial.

Defendant was engaged in the business of writing what is known as industrial insurance. It is usually carried by people of small means and in small amounts. Plaintiff had other policies in the same company. As to whether these policies covered her life or the lives of other members of her family the record does not disclose. She testified that on December 1, 1932, when defendant's agent was at her home collecting premiums on the other policies, he solicited additional insurance and that in the course of the conversation she advised the agent that she was thinking of taking out a policy on the life of her uncle, one James Triplett. She further claims that the agent thereupon advised her that she could sign the application and that it would not be necessary to procure the uncle's signature although she offered to do so. She also testified that the agent said that he was personally acquainted with the uncle and knew him to be in good health; that the company had no doctors; that no examination was necessary; and that the policy was incontestable after two years. Some of these statements were disputed by the agent, but it is conceded that on the occasion referred to the agent made out an application for a policy of insurance on the life of plaintiff's uncle, filling in the answers to the questions contained in the application in his own handwriting from information furnished by plaintiff and then had plaintiff sign the application in the following manner: "James Triplett by Kathryn Mae Dight—Related as niece." The signature was witnessed by the soliciting agent, J. W. Pate.

The application was presented to the company, and within a few days a policy was issued and delivered to plaintiff, in whose possession it remained until Triplett's death on February 25, 1936. In accordance with the request contained in the application, plaintiff was named as beneficiary.

Admittedly Triplett was not present when the application was executed and delivered, although plaintiff testified, and this was developed by defendant's counsel on cross-examination, that after making the application she told Triplett that she was taking out the insurance and that he said it was all right. While the record does not disclose whether this conversation was before or after the delivery of the policy, the trial court found that it occurred after the delivery. The testimony offered would have justified a finding that the conversation took place after the making of the application and before the delivery of the policy, but for the purpose of this decision the finding must stand.

It appears that during the life of the policy two payments were not made within the time required by its terms. Plaintiff contended that the payments were not made because of the failure of the agent to call for them and further that the agent had agreed to prevent a lapse of the policy by taking care of payments in case he did not collect from plaintiff in due time. This was denied by the agent. We do not see how the defaults affect the rights of the parties, as it appears that the payments were eventually made and accepted and that the company subsequently accepted premium payments for about two years, so it cannot now be heard to say that the policy had lapsed.

Due notice and proof of death were given by plaintiff to defendant and payment declined. The reasons assigned therefor are: (1) That the policy of insurance was taken out without the knowledge or consent of the insured and was therefore against public policy and void; (2) that the beneficiary had no insurable interest in the life of the insured at the time of the issuance of the policy; and (3) that there was fraud and misrepresentation on the part of the beneficiary in answering questions concerning the physical condition of the insured.

▪ Was the policy void *ab initio* as claimed by defendant so as to relieve it from liability thereunder? It has been held by many courts and seems to be the generally recognized rule that irrespective of the existence of an insurable interest a life insurance policy procured by one without the knowledge and consent of the person whose life is insured is void as against public policy even though the insurance company knew at the time it issued the policy that the insured did not know it. Interstate L. & A. Co. v. Cook, 19 Tenn. App. 290, 86 S. W. (2d) 887; Branson v. National L. & A. Ins. Co. 4 Tenn. App. 576; Fisher v. Metropolitan L. Ins. Co. 160 Mass. 386, 35 N. E. 849, 39 A. S. R. 495; Metropolitan L. Ins. Co. v. Blesch, 22 Ky. Law Rep. 530, 58 S. W. 436; Metropolitan L. Ins. Co. v. Monohan, 102 Ky. 13, 42 S. W. 924. The question has been raised in actions for money had and received commenced for the purpose of recovering premiums paid on policies upon the ground that the insurer never gave the consideration in contemplation of which the premiums were paid. Hogben v. Metropolitan L. Ins. Co. 69 Conn. 503, 38 A. 214, 61 A. S. R. 53; McCann v. Metropolitan L. Ins. Co. 177 Mass. 280, 58 N. E. 1026; Metropolitan L. Ins. Co. v. Felix, 73 Ohio St. 46, 75 N. E. 941, 4 Ann. Cas. 121.

We have, however, in this state a statute which we believe prevents us from applying to the policy under consideration the principles recognized in the cases holding that a policy procured by one person upon the life of another without the latter's consent is void. It is 1 Mason Minn. St. 1927, § 3396, and reads:

"In any claim upon a policy issued in this state without previous medical examination, or without the knowledge or consent of the insured, or, in case of a minor, without the consent of his parent, guardian, or other person having his legal custody, the statements made in the application as to the age, physical condition, and family history of the insured shall be valid and binding upon the company, unless wilfully false or intentionally misleading."

It is very evident that in the enactment of this statute the legislature had in mind that industrial insurance was a common form of insurance in the state of Minnesota and no doubt took into con-

sideration the facts that such form of insurance was often written without previous medical examination and sometimes without the knowledge or consent of the insured. It is common knowledge that such insurance is frequently written on the lives of children of tender age, and in many instances group policies are written covering the lives of all employes in an industry without the knowledge or consent of said employes, or at least some of them.

Speaking of such insurance, Justice Dibell in McAlpine v. Fidelity & Casualty Co. 134 Minn. 192, 196, 158 N. W. 967, 968, said:

"There is a kind of life insurance where no medical examination, such as is usual with life insurance companies, is required, and which is sometimes taken without the knowledge of the insured. It goes under the general designation of industrial life insurance. It is not accident insurance, nor casualty insurance, nor workmen's compensation. The premiums are small, often five cents a week or some multiple thereof, or other small amount paid monthly. The average amount of the insurance is small—hardly more than sufficient to pay burial expenses and give slight temporary relief. The agents of the insurance company solicit the insurance and call weekly or monthly and make collections. Sometimes insurance is taken, or in the past it has been taken, without the knowledge of the insured. The companies engaging in it write child insurance. In a way the insurance is a sort of family insurance intended as a protection against family misfortune, or as an inducement to thrift and saving, and often all members of the family are insured. While the periodical premiums are small the insurance is not cheap. On the contrary, owing partly to the character of the risks and lack of discrimination in taking them and partly to the cost of administration, it is expensive. With the particular characteristics of it we are not now concerned. It is enough to know that it is a kind of insurance in common use and familiar to legislative bodies and of the general character stated. There are millions of this insurance in Minnesota."

Holding as we do that under our statute such policies may be written without the knowledge or consent of the person insured,

we find it unnecessary to decide what effect the giving of notice to and procuring of consent from the insured after the issuance and delivery of the policy would have.

Industrial policies of the type involved herein should be liberally construed. They are often written upon the solicitation of agents for people unable to understand their effect or meaning. Courts should not search for an avenue of escape to benefit an insurance company that has taken premiums from an applicant named as beneficiary in a policy for nearly four years, particularly when the application on its face was notice to the insurer that it was not executed by the insured and its agent knew that it was made without his knowledge or consent. In issuing the policy in question defendant company did not concern itself with whether the insured had knowledge of the policy or consented thereto, but was satisfied to deliver it to plaintiff upon an application which showed on its face that it was being made by plaintiff and not by the insured, and we hold that, aided by 1 Mason Minn. St. 1927, § 3396, such a policy is valid and binding upon the issuing company.

■ The point made by defendant that plaintiff had no insurable interest in the life of insured is not well taken. The record discloses that prior to the making of the application plaintiff had advanced in behalf of the insured sums of money exceeding $100. A creditor has an insurable interest in the life of his debtor. 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 4641; Hale v. Life Ind. & Inv. Co. 65 Minn. 548, 68 N. W. 182.

In any event, the court specifically found that plaintiff did have an insurable interest in the life of insured as a creditor, and the evidence amply sustains such finding.

Complaint is made of a variance between the pleading and proof as to plaintiff's insurable interest. The complaint alleges the issuance of the policy and refers to the application and policy as exhibits. The application shows the relationship as niece. No other reference was made in the complaint as to the nature of plaintiff's insurable interest nor was the insurable interest challenged by any specific allegation in the answer.

At the trial plaintiff's counsel inquired of her on direct examination whether she loaned decedent any money prior to his death. This was objected to by defendant on the ground that the question involved a conversation with the deceased person and required written evidence. The objection was overruled. Thereupon the plaintiff answered that she did. The record then discloses the following:

Q. "When was that?

A. "It covered a period of months.

Q. "When did you first loan him money?

A. "I do not know the exact dates although I could get them. I paid water bills, also light, electricity, and I loaned the money to save the home.

Q. "How much was the total?

A. "I haven't got the exact figures, but it would run way over $100.

Mr. Burnquist: "It is understood all this is objected to on grounds stated, your Honor.

The Court: "Yes."

There was no objection that the testimony was inadmissible under the pleadings nor upon any ground other than that the answer to the question propounded involved a conversation with a deceased person.

The court in its memorandum attached to the findings and conclusions and of its own motion ordered the complaint amended so as to conform with the proof in respect to the relationship of debtor and creditor between plaintiff and insured. While the practice of amending pleadings in such manner cannot be commended, we cannot say that the court abused its discretionary power in ordering the amendment to conform with the proof if such amendment was necessary. As stated, the answer nowhere specifically challenged plaintiff's right to recover for lack of insurable interest.

2 Mason Minn. St. 1927, § 9280, provides:

"The court, in furtherance of justice and upon proper terms, may amend any pleading, process, or proceeding, either before or after

judgment, by adding or striking out the name of a party, by correcting a mistake in the name of a party or in any other particular, by inserting other material allegations, or, if the amendment does not substantially change the claim or defence, by conforming any pleading or proceeding to the facts proved."

Hall v. Skahen, 101 Minn. 460, 112 N. W. 865; Gracz v. Anderson, 104 Minn. 476, 116 N. W. 1116.

■ Little need be said concerning defendant's complaint that there was fraud or misrepresentation perpetrated by plaintiff concerning insured's physical condition. Under 1 Mason Minn. St. 1927, § 3396, in order for defendant to prevail upon that issue it would have been necessary to prove that the representations as to physical condition were wilfully false or intentionally misleading. There was no proof in this case upon which such a finding could be had. The court specifically found against the defendant upon that issue, and such determination was amply justified from the evidence. There was no showing whatever that the plaintiff had any knowledge or information concerning the ailments with which defendant now claims insured was afflicted. The burden was on the defendant to make such showing.

The order appealed from is affirmed.

STONE, JUSTICE (concurring).

I concur in the result upon the ground that under the circumstances of this case the consent of the insured was procured, after the issue of the policy, true, but in such fashion that the consent is retroactive and effective as of the date of the delivery of the policy. I cannot at present concur in a holding that the reference in 1 Mason Minn. St. 1927, § 3396, to life insurance issued "without the knowledge or consent of the insured" has of itself affected any enlargement of the category of cases wherein life insurance is valid even though issued without the consent of the insured.

LORING, JUSTICE (concurring).

I concur in the result.