METROPOLITAN LIFE INSURANCE CO. v. A. R. BELL, Admr. of MINNIE OWENS.

Western Section.    November 12, 1926.

Petition for Certiorari denied by Supreme Court January 29, 1927.

1. **Insurance. Evidence. Burden of proof is upon plaintiff to show that insurance company made payment to wrong party.**

   In an action to recover on an insurance policy which contained a "facility of payment clause," held that the burden of proof in the trial court was upon the plaintiff to show that the officer acting for the company was not authorized to make payment to party to whom the money was paid.

2. **Insurance. Under industrial insurance policy containing "facility of payment clause," the company may pay to any one coming under the facility of payment clause.**

   The payment of the benefit to certain ones of the classes named under the policy is optional with the insurer and it can not be compelled by one of those to whom it might elect to give the benefit to pay it to him.

3. **Insurance. Good faith on part of company in payment under a "facility of payment clause" discharges all liability.**

   Where it appears that the insurer has exercised the option given it by the "facility of payment clause," and has in good faith made payment to one of the class named, it is thereby discharged from liability to any person, at least where no beneficiary is designated.

4. **Insurance. Evidence. Evidence held to show good faith on part of insurance company.**

   In an action by the administrator of deceased to recover from an insurance company industrial insurance which had been paid to a man living with deceased and purporting to be her husband, but who in fact was not her husband, where the evidence showed that the agent of the company who collected the premium thought that they were man and wife, and the party produced the certificate of death which showed she was his wife, and the company upon this representation paid to him the insurance, held that the evidence showed that the company had exercised good faith in making the payment and that it was not liable to the administrator.

Appeal in Error from Circuit Court, Madison County; Hon. R. B. Baptist, Judge.

Reversed.

Bond & Bond, of Jackson, for plaintiff in error.

H. Waldrop and P. L. Harden, of Jackson, for defendant in error.

HEISKELL, J.   These two suits were instituted before a justice of the peace by A. R. Bell as Administrator of Minnie Owens to recover amount of two policies of insurance on the life of Minnie Owens.

The cases were tried together and one judgment rendered. The Metropolitan · Life Insurance Company appealing to the circuit court of Madison county, Tennessee.

On the 16th of June, 1926, the cases consolidated and were heard before the judge without a jury and judgment rendered against the Metropolitan Life Insurance Company for three hundred and ninety dollars and fifty cents ($390.50) and costs, being the amount of the two policies sued on. From this judgment the Metropolitan Life Insurance Company has prosecuted its appeal after its motion for a new trial had been overruled.

The defense of the Insurance Company was that it had paid the amounts due on these two policies to Robert Lee who was living with Minnie Owens at the time of her death, February 4, 1925, as her husband. That they had been living together for years as man and wife and were so understood to be in the neighborhood in which they lived and that the amount of the policies was paid to Robert Lee as husband and as one who had paid bills and accounts for Minnie Owens and had paid premiums on the policies.

The policies are what is known as "Industrial Insurance Policies" and each has the following provisions to-wit:

"The company may make any payment or grant any non-forfeiture privilege provided herein to the insured husband or wife or any relative by blood or connection by marriage of the insured, or to any other person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, or for his burial; and the production of a receipt signed by either of said persons or of other proof of such privilege to either of them shall be conclusive evidence, that all claims under this policy have been satisfied."

There was a motion by the Insurance Company, the defendant below, for a peremptory instruction on the ground that there was no evidence to support a verdict against it. The motion for a new trial in the lower court and the assignments of error in this court insist that this peremptory instruction should have been given. As the case was tried without a jury it looks better to say that the sole question in the case is whether there is any evidence to support the judgment of the trial court. And it may fairly be taken as conceded, by the brief for the plaintiff below the appellee here, that this question depends upon whether or not Robert Lee at the time payment was made to him appeared to be the husband or to be equitably entitled to receive the proceeds of said policies by reason of having incurred expense on behalf of the insured. In other words, it is contended that the company did not in good faith make payment to one so appearing to it.

The burden of proof in the trial court was upon the plaintiff to show that the officer acting for the company was not authorized to make payment to Robert Lee under the provision of the policy above set out, and now in this court it must appear that some

material evidence is contained in the record to sustain this contention. The law applicable to the case is given in the following authorities:

"Policies of this character are written almost exclusively upon the lives of the poorer working classes and are issued for small amounts. The purpose of these policies is not to create a fund to provide for the future support and maintenance of the insured's family, but to provide a fund with which the insured can procure in his last sickness, etc. To effectuate the purpose of such policies, prompt payments are provided for, the contract ordinarily providing for payment of the benefit within twenty-four hours after satisfactory proofs of death have been furnished to the insurer. Payment upon such short notices naturally gives the insurer no time to investigate the rights of the different claimants and out of the insurer's desire to protect itself in making these prompt settlements has grown the clause known as the 'facility' or 'facility of payment clause.' The purpose of these clauses has been expressly held to be for the protection of the insurer, in making quick payments upon these policies without the expense of administration proceedings."

Metropolitan Life Ins. Co. v. Nelson, 170 Ky. 674; S. C., L. R. A. 1916, F. Page 457 and notes.

"The stipulation in the first clause for payment to the person 'appearing' to said company to be equitably entitled to the benefit is not a provision for payment to one in fact equitably entitled to payment, but is a provision for payment to the person appearing to the insurer to be equitably entitled to receive the benefit."

Bradley v. Prudential Life Ins. Co., 187 Mass. 226.

"And the payment of the benefit to certain ones of the classes named under the policies, is 'optional' with the insurer and it cannot be compelled by one of those to whom it might elect to give the benefit to pay it to him."

Prudential Life Ins. Co. v. Godfrey, 75 N. J. Eq. 267; Nolan v. Prudential Life Ins. Co., 123 N. Y. Supp. 688.

"It appears that when the insurer has exercised the option given it by a 'facility payment clause' and has in good faith, made payment to one of the class named, it is thereby discharged from liability to any person, at least where no beneficiary is designated."

A. R. Worley was assistant manager of the defendant company and acted for the company in making the payment to Robert Lee. If then to Worley, acting in good faith and as a reasonably prudent man, it appeared that Robert Lee was a proper person to receive the proceeds of said policies, and there is no material evidence to the contrary, then the plaintiff cannot recover and the judgment must be reversed, otherwise the judgment must be affirmed.

Worley testifies as follows:

"I did know Robert Lee, the person asked about. He lived at Jackson, Tennessee. He did make a claim of the Metropolitan Life Insurance Company for payment on insurance policies of that company which had originally been issued to Minnie Owen. After the death of Minnie, Robert Lee claimed to have married her and was her husband at her death. I know as a matter of fact that they were living together at the time of her death as man and wife at Jackson, Tennessee. There were two policies of insurance issued in favor of Minnie Owen. One No. 71882637 November 19, 1923 for $237. Another No. 73904130, June 2, 1924 for $154. Minnie died about February 4, 1925. After her death Robert Lee made claim against the company for payment of the policies, he claiming that he was Minnie's husband and had paid the premiums on the policies and other expenses and as such was entitled to payment. He made proof of the death and in same Minnie was designated as Minnie Owen Lee.

"I have some papers relating to the claim, consisting of 1st. Proof of death and claim signed by Robert Lee who claimed to have been the husband and who had paid the premiums and other expenses. 2nd. Certificate of the attending physician wherein the insured is designated as Minnie Owen Lee. 3rd. Declaration of loss of policies and claim of Robert Lee as husband, signed by him. 4th. Check of the Metropolitan Life Insurance Company to Robert Lee of February 13, 1925 for $391 being the amount of both policies. The check is endorsed by Robert Lee and was paid by the company.

"I here file said papers as Exhibits 1, 2, 3, and 4 to this answer and as a part of this my deposition.

"I, as agent for the company signed my name as witness on Exhibits Nos. 1, 2, and 3, as will be seen from the same. I know Robert Lee signed said papers, Exhibits 1, 2, and 3, where his signature appears and that he endorsed said check. He made claim as husband. He claimed that as husband of Minnie he had paid and incurred expenses for Minnie and was entitled to be paid. From the evidence I had, it appeared that he was entitled to be paid the amount of said policies, not only as husband but as having incurred expenses as before set out."

It is contended for plaintiff that Robert Lee denies that he claimed as husband. He does say he was not asked these questions. But consider that his deposition was taken months after he claimed and collected the money. That when he made his claim he was dealing with those who thought he was the husband of Minnie and when his deposition was taken he was dealing with those who knew he had not married her. When he made the application he

had the inducement of getting the money; when he gave his deposition he had no such incentive. When he made his claim he had the probability of long continued and recently ended cohabitation to support the claim of marriage. When his deposition was taken this support was all gone. Besides let us consider just what the record shows in Lee's testimony to support Worley. He says:

"Q. 15. You said that you went to the Insurance Company and made out a claim for the payment of these policies. A. Yes sir, I give them to him if that is what you mean. .

"Q. 16. I will ask you to state to the court just exactly what happened that day that you went up there to the office. A. It wasn't anything said only I walked up to the window and poked the papers to the lady. I said here is a death claim I have got on my old lady. She said I will get to you in a minute. The man fixed them up and told me I would get the money in eight or nine days. He told me that was all.

"Q. 17. Did you ever claim to the insurance company to be the husband of Minnie Owen? A. No sir.

"Q. 18. Did you tell them on that occasion that you had paid expenses for Minnie Owen? A. Yes sir.

"Q. 19. Who asked you that? A. The agent, Bell. The agent's name was Bell too.

"Q. 20. Did you present the paper to Bell? A. He was in there and he told me to wait there. He would see the superintendent.

"Q. 21. When he came in what did he ask you? A. The superintendent,—He didn't ask me anything. The lady what was in there, she presented it to him. She said she had a death claim for this man.

"Q. 22. They didn't ask you any more questions, and filled out the claim. Wasn't anything said about the debts? A. This insurance agent said that boy——————Well, Mr.—(something) that is a good payment, the wife is gone. I certainly will miss that couple."

As he handed in the papers he said, "Here is a death claim I have got on my old lady," and the agent Bell, who was evidently the collector of premiums, said "That is a good payment, the wife is gone. I certainly will miss that couple." Robert Lee presents his papers as death claim on his old lady, from which any one would naturally suppose he meant his wife and the collector who knew they lived together as husband and wife, who had found it easy to collect the premiums from them and thought they were married said the claim was good, he knew the wife was dead. Is it strange that every one in that insurance office should think that Robert Lee was the husband of the insured? Is it strange that the physician's statement gives full name of deceased as "Minnie

Owen Lee" and that the statement of the claimant Robert Lee contains this:

"Full name of deceased—Minnie Owen Lee."

"20. Was deceased married or single? Married. If married, give full names, ages and addresses of widow or widower, if alive, and of living children.

"Widow or widower. Robert Lee. Age 26. No. 120 Pearl St. Jackson, 10.

"Living children. None.

"21. By whom have the premiums been paid? Robert Lee.

"22. Are you now or have you ever been in the employ of this company? (Where and in what capacity?) No.

"23. By what right and relationship do you claim the proceeds of the insurance? Husband and premium payer."

With this corroboration of Worley's testimony and no evidence whatever to bring to his attention or that of any agent of the company any fact to cast doubt on the marriage of Lee to Minnie Owen, there is no evidence to support the finding that Robert Lee did not appear to said company to be the husband of the insured and equitably entitled to the proceeds of the policies by reason of having incurred expense on behalf of the insured. We do not understand that counsel for the plaintiff disputes the rule laid down in the authorities cited for defendant which justify the payment to Robert Lee under the facts as we find them to be in the record. The contention is that the facts do not bring the case within the rule contained in the authorities cited. We hold that the evidence shows that Robert Lee appeared to the defendant insurance company to be a proper person to whom payment could be made under the facility of payment clause referred to supra and that there is no material evidence to support the finding to the contrary.

The motion of defendant for a peremptory instruction should have sustained by the trial court. The assignments of error are sustained, the judgment of the lower court is reversed and plaintiff's suit is dismissed.

Owen and Senter, JJ., concur.