INTERSTATE LIFE & ACCIDENT CO. v. COOK.—86 S. W.
(2d) 887.

Eastern Section.   July 13, 1935.

Petition for Certiorari denied by Supreme Court, October 19, 1935.

Finley & Campbell and Horace E. Boydston, all of Chattanooga, for plaintiff in error.

H. M. Vaughn and M. G. L. Roberts, both of Chattanooga, for defendant in error.

FAW, P. J. This is an appeal in the nature of a writ of error by Interstate Life & Accident Company, the defendant below, and hereinafter called defendant, from a judgment of the circuit court of Hamilton county against it and in favor of Artie Cook (formerly Artie Ware), the plaintiff below, and hereinafter called plaintiff, for $125 principal and $65.28 interest thereon, aggregating $190.28, and all costs of suit.

The action was instituted by plaintiff in the court of a justice of the peace of Hamilton county on October 14, 1932, to recover sums paid by her to the defendant throughout a period of years as

premiums upon a policy purporting to insure the life of one John Stewart, colored, but which policy (the plaintiff avers and the trial courts held) was illegal and void for the reason that the plaintiff, who was named as beneficiary in the policy, had no insurable interest in the life of said John Stewart. The plaintiff's cause of action is stated in the justice's warrant as follows:

"An action for money had and received as premium on an insurance policy #210493 issued by defendant on the life of John Stewart on December 15, 1919, in whose life plaintiff had no insurable interest by relation or otherwise. Plaintiff was induced to pay the premium of 25 cents per week by defendant's authorized agent representing to her that if she were made beneficiary under the policy and paid the premium thereon she would be entitled to collect the insurance upon the death of the insured. Defendant knew or should have known that it was an illegal transaction. The transaction was a civil fraud on plaintiff. Plaintiff did not know the transaction was illegal. Plaintiff received no consideration of value for the money she paid, and sues for the full amount paid, $125.00, plus interest $65.28, total $190.28. The contract was void as to the consideration paid. (The same being under a magistrate's jurisdiction.)"

The case was tried without a jury in the circuit court, and is, therefore, triable de novo in this court, but with a presumption in favor of the correctness of the judgment of the trial court, unless the evidence preponderates against such judgment. Code, section 10622.

There are assignments of error (1) that there is no evidence to support the "verdict," and (2) that the evidence greatly preponderates against the "verdict." However, there are no conflicts in the testimony of the two witnesses (one for the plaintiff and one for the defendant) who testified at the trial below, and the real issue here is whether the trial court reached the correct legal conclusion upon the undisputed facts; and this is a proper inquiry under the assignment that there is no evidence to support the judgment of the court.

The plaintiff's proof consists of the testimony of the plaintiff herself, with certain documentary exhibits thereto. The plaintiff is an illiterate colored woman, unable to read or write. The transactions involved in this suit were initiated in the year of 1919, and at that time plaintiff was living in the city of Chattanooga (where she still lives) with her then husband, who worked at certain railroad shops in that city. Plaintiff had a "boarder" (and only one), John Stewart, a colored man, who "worked at the brick yard," from whom plaintiff received $4 per week for his "board and washing," and which sum of $4 John Stewart paid "every Saturday evening."

Plaintiff also had some income from "washing and ironing" which she did for other persons.

At the solicitation of an agent of defendant company, plaintiff "took out" a policy on the life of John Stewart. An application blank was filled up and the name of John Stewart signed thereto by one of defendant's soliciting agents, H. D. Gregory. The application is dated December 1, 1919. John Stewart was not present when the application was prepared and signed, and he did not authorize plaintiff or any one else to apply for insurance on his life. Plaintiff's undisputed testimony is that "John didn't want no policy; he didn't believe in the things."

The "information" necessary to fill out the application blank was furnished to the agent by plaintiff. John Stewart had been boarding with plaintiff for several years theretofore, and plaintiff had acquired considerable information from him relative to his age, family history, previous health and illness, etc.

Plaintiff was named in the application as "beneficiary," and her relation to the purported applicant was stated therein as "cousin;" but she was not related to him as cousin or otherwise.

Pursuant to the aforesaid application, defendant company issued a policy which purported to insure the life of John Stewart, and by the terms of which policy defendant contracted to pay to the named beneficiary, Artie Ware, upon due proof of the death of John Stewart, the sum of $48.75. There was a further provision that "the death benefit shall be double the amount otherwise payable if the insured shall die as a result of accidental injury sustained while riding as a regular passenger on any public conveyance operated for the transportation of passengers."

The policy also provided that, in case of accident or sickness of the insured, the company would pay to him a weekly indemnity according to a schedule, and subject to certain conditions contained in the policy.

The aforesaid policy was delivered to the plaintiff and retained by her, and was filed by her as an exhibit to her testimony in this case. John Stewart at no time claimed any rights under the policy, and at the time of the trial below plaintiff did not know his whereabouts and had not seen him for about three years theretofore. She stated that she did not know "whether he is living or dead."

Defendant's agent, H. D. Gregory, paid the first week's premium on the policy, and thereafter plaintiff paid the premiums, at the rate of 25 cents per week, until July 8, 1929, when she ceased to pay and no further premiums were paid thereon. The sum of the premiums thus paid by plaintiff is $125, and for this sum, with interest and costs, the trial court gave her a judgment against the defendant.

Plaintiff testified that defendant's agent. H. D. Gregory, asked her to take out the insurance on John Stewart, and told her that

if she would do so, and would pay the premiums, she "would get the money after he is dead."

J. W. Lancaster, "local manager". for defendant company, as a witness for defendant, filed the aforementioned application, and stated that he did not know the whereabouts of H. D. Gregory, the defendant's agent named in the application. He stated further that defendant company considered the policy as "a bona fide contract, based on the application."

Upon the facts disclosed by the record, we are of the opinion that the aforesaid policy was void from the beginning, and that no risk attached thereunder, for two reasons:

"(a) The almost universally accepted rule is that a party insuring a human life must have an insurable interest therein if the insurance is effected for his own benefit, or the policy will be void; and he must prove such interest in order to recover, since public policy does not permit one having no insurable interest to procure a policy of insurance upon the life of a human being and pay the premium as a speculation, or on a chance of collecting the insurance money. This is upon the theory that the public has an interest, independent of the consent and concurrence of the parties, that no inducement shall be offered to one man to take the life of another. The parties to a contract of insurance cannot, even by solemn agreement, override the public policy which requires the beneficiary to have an insurable interest." 1 Couch, Cyc. of Insurance Law, section 295, pages 769, 770. See, also, Quinn v. Catholic Knights, 99 Tenn., 80, 86, 41 S. W., 343; Clement v. Insurance Co., 101 Tenn., 22, 35, 46 S. W., 561, 42 L. R. A., 247, 70 Am. St. Rep., 650; Marquet v. Insurance Co., 128 Tenn., 213, 223, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677; Franklin, etc., Co. v. Hazzard, 41 Ind., 116, 13 Am. Rep., 313.

"(b) Irrespective of the existence of an insurable interest, a life policy procured by one without the knowledge and consent of the person whose life is insured is void as against public policy, even though the insurance company knew at the time it issued the policy that the insured did not know of it." Branson v. National Life & Accident Insurance Co., 4 Tenn. App., 576, and cases there cited; Fisher v. Metropolitan Life Insurance Co., 160 Mass., 386, 35 N. E., 849, 39 Am. St. Rep., 495; Metropolitan Life Insurance Co. v. Blesch (Ky.), 58 S. W., 436; Metropolitan Life Insurance Co. v. Monohan, 102 Ky., 13, 42 S. W., 924.

It is argued for the defendant that the policy here in question was valid and binding on the insurance company until it lapsed for nonpayment of premiums, notwithstanding the absence of an insurable interest in the named beneficiary, for the reason that it was an "industrial insurance" policy.

It has been held, notably in Kentucky, that the rule requiring an insurable interest in the beneficiary is not applicable to an indus-

trial insurance policy which contains the "facility of payment" clause. See 1 Couch, section 296d, page 789; Metropolitan Life Insurance Co. v. Nelson, 170 Ky., 674, 186 S. W., 520, L. R. A., 1916F, 457, Ann. Cas., 1918B, 1182; Smith v. National Life & Accident Insurance Co., 216 Ky., 401, 287 S. W., 928, 929.

█ But reliance upon the exception of industrial insurance policies from the rule requiring an insurable interest in the beneficiary is unavailing in the instant case, for the all-sufficient reason that the policy does not contain a "facility of payment" clause. It contains a provision that: "The production by the company of this policy and of a receipt for the sum insured, signed by the beneficiary, or an executor, administrator or legal representative of the insured, shall be conclusive evidence that such sum has been paid and that all claims under this policy has been fully satisfied." But we think it obvious that the provision just quoted falls far short of constituting a "facility of payment" clause, examples of which may be seen from the opinions in the following cases: Metropolitan Life Insurance Co. v. Chappell, 151 Tenn., 299, 269 S. W., 21; Hullett v. Hullett, 162 Tenn., 431, 36 S. W. (2d), 896; Parmer v. Insurance Co., 11 Tenn. App., 584; Lockridge v. Metropolitan Life Insurance Co., 13 Tenn. App., 515; Bailey v. Metropolitan Life Insurance Co., 14 Tenn. App., 11; Metropolitan Life Insurance Co. v. Bell, 4 Tenn. App., 168.

For the reasons we have stated, the defendant company assumed no risk by the issuance of the policy here in question. In a contract of insurance, "the risk assumed by the insurer, on the one side, and the premium paid by the assured on the other, are the essential elements. The premium is the consideration for the risk; and if the insurer do not in fact run the risk, or if he be discharged from it, the consideration fails; consequently if the premium, in whole or part, remains unpaid, it cannot be demanded; and if paid, may be recovered upon an implied promise." Bostick v. Maxey, 5 Sneed, 173, 177.

"The risk of loss is of the very essence of insurance and forms the principal foundation of the contract." 1 Joyce on Insurance, section 16, page 113.

"If no risk attaches, no premium, in the absence of fraud, is earned." Jones & Abbott v. Insurance Co., 90 Tenn., 604, 605, 18 S. W., 260, 25 Am. St. Rep., 706.

It will be seen from an annotation in L. R. A., 1917A, pages 477 et seq., that in some cases there cited from other jurisdictions, where insurance policies were validly taken by an applicant without an insurable interest in the life attempted to be insured, and there was no fraud on the part of the insurer's agent, a recovery of the premiums paid was denied, under the rule that the law will not aid either party to an illegal contract, but will leave the parties where it finds them.

But it has been held in other cases cited in the same annotation that where the insurer's agent fraudulently represented to the plaintiff that the policy (issued on a life in which the plaintiff had no insurable interest) was valid, and the plaintiff relied and acted on this statement, he might recover the premiums.

We think it apparent from the proof that the present plaintiff was guilty of no intentional fraud or wrongdoing, and was induced to take the policy and pay the premiums by the solicitation of defendant's agent and his representation to the effect that the policy would be valid.

In Jones & Abbott v. Insurance Co., supra, 90 Tenn., 604, 605, 18 S. W., 260, 25 Am. St. Rep., 706, the court, speaking through Mr. Justice Lurton, said:

"The contract of insurance is a conditional one. If no risk attaches, no premium, in the absence of fraud, is earned. When the risk never attached, and no risk was ever run, the premium is to be returned in case it has ben paid, and the assured was guilty of no fraud." See, also,. Branson v. National Life & Accident Insurance Co., supra, 4 Tenn. App., 576, page 581; Dushan v. Metropolitan Life Insurance Co., 14 Tenn. App., 422, 434; Metropolitan Life Insurance Co. v. Asmus (Ky.), 78 S. W., 204; Metropolitan Life Insurance Co. v. Blesch, supra.

We are of the opinion that the trial court did not err in awarding plaintiff a judgment for the premiums paid by her, with interest, unless her action was barred by the statutes of limitation, upon which defendant sought to rely in the court below, and upon which it bases an assignment of error in this court, to which assignment we will later advert.

In the circuit court the defendant filed a demurrer as follows:

"Comes the defendant by its attorneys and demurs to so much and such parts of the declaration and summons filed against it in this cause as charge the defendant or its agents with misrepresentations and practicing a civil fraud upon the plaintiff, upon the following grounds:

"That neither this court nor the justice of the peace court in which this suit originated has jurisdiction over said matters and things, they being based upon alleged fraud and misrepresentations, of which matters and things the chancery court has exclusive jurisdiction.

"Wherefore, the defendant demurs and prays the judgment of the court as to whether it should be forced to make further defense."

This demurrer was manifestly directed to the warrant issued by the justice of the peace, as the only "declaration and summons" in the case was contained in the warrant.

The demurrer was overruled below, and this ruling is made the basis of an assignment of error in this court.

"An action for money had and received is a proper form of an action to recover back premiums paid." 32 C. J., page 1238, section 414.

■ Where the payment of premiums is induced by the false and fraudulent representations of the insurer's agents, "the tort can be waived, and the money paid be recovered in an action for money had and received." 3 Couch on Insurance, section 723, page 2378.

■■ The action for money had and received is based upon an implied assumpsit. It is an action at law, and properly cognizable in a court of law, and "is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and ex aequo et bono it belongs to another." 2 R. C. L., page 778, par. 34, and page 745, par. 5. The trial court did not err in overruling the demurrer.

The defendant assigns error in this court upon the action of the trial court in admitting certain specified testimony of the plaintiff with respect to statements made to her by defendant's agent. It is provided by rule 11, subsection 5, of the published rules of this court, that: "Error in the admission or exclusion of testimony . . . will not constitute a ground for reversal and a new trial, unless it affirmatively appear that the same was specifically stated in the motion made for a new trial in the lower court, and decided adversely to the plaintiff in error, but will be treated as waived." See Williams Annotated Code, volume 7, page 547.

The Supreme Court has the same rule (rule 14, subsec. 5). See Williams Annotated Code, volume 7, page 527.

■ In the instant case, the motion for a new trial below contains no mention of the exclusion of testimony, and hence the assignment of error on that ground in this court must be, and is, overruled. McCommon v. State, 130 Tenn., 1, 18, 168 S. W., 581.

Through an assignment of error here, based on the motion for a new trial below, the defendant says that: "The court erred in holding that the plaintiff is not barred in whole or in part from a recovery in this cause by the contractual limitation contained in the policy of insurance and/or statutes of limitation applicable thereto."

■ Neither the plaintiff's action nor the judgment of the trial court is based on the policy, but distinctly upon the theory that the policy was void and a nullity; hence it is obvious that no "contractual limitation contained in the policy" is available to the defendant in this suit.

For support of its eighth assignment, supra, defendant relies upon sections 7812, 7814, and 8593 of the Code, which sections are as follows:

7812. "All contracts founded, in whole or in part, on a gambling

or wagering consideration, shall be void to the extent of such consideration.''

7814. ''Moreover, any person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety days from the time of such payment or delivery.''

8593. ''Actions to recover money or goods lost at any kind of gambling or betting, and paid or delivered, if brought by the loser, shall be commenced within ninety days next after such payment or delivery.''

It is the contention of defendant that, if the court should hold that the policy in question was void ab initio for lack of insurable interest of plaintiff in the life of John Stewart, ''then the court could only conclude that this policy is a wagering or gambling contract,'' and governed by the Code sections quoted, supra.

Plaintiff's suit was begun more than three years after the last payment of premiums was made by her to defendant. It is seen that, of the three Code sections quoted, only section 8593 is, in terms, a statute of limitation, although the three sections relate to the same general subject. Does the present action fall within the contemplation of section 8593, supra?

Such contracts as that here involved have been characterized by our Supreme Court and courts of numerous other jurisdictions as ''wagering contracts.'' Marquet v. Insurance Co., supra, 128 Tenn., 213, page 223, 159 S. W., 733, L. R. A., 1915B, 749, Ann. Cas., 1915B, 677; 1 Cooley's Briefs on Insurance (2 Ed.), pp. 333, 334, citing many cases.

But, as we have hereinbefore pointed out in another connection, Couch in his comparatively recent cyclopedic work on insurance (vol. 1, sec. 295) states that the rule which voids a policy procured by one, for his own benefit, upon the life of another in whose life he has no insurable interest, ''is upon the theory that the public has an interest, independent of the consent and concurrence of the parties, that no inducement shall be offered to one man to take the life of another.'' See, also, 1 Cooley's Briefs on Insurance (2 Ed.), p. 334, and cases cited.

On this subject the federal Supreme Court says:

''The contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy.'' Warnock v. Davis, 104 U. S., 775, 779, 26 L. Ed., 924, 926.

And so, in Tennessee, the courts recognize both the wager element and the temptation to crime as basis for the rule; but this court (with the subsequent approval of the Supreme Court) has, in effect,

held the "temptation to crime" as the more potent reason for condemning such insurance contracts. In Branson v. National Life & Accident Insurance Co., supra, the court quoted with approval from a case note in 56 L. R. A., page 591, as follows:

"The above cases show how meagerly the question of consent has been considered by the courts. The implication from them, rather than much actual authority, is to the effect that consent is necessary to the validity of a life-insurance policy. The principles governing the subject seem very clear. It can hardly be denied that public policy is against the right of one person to insure the life of another who does not consent. The courts have fully established the invalidity of wagering policies, whether on property or on life. But the real root of the evil in all such policies is, not the wager element, but the temptation to crime. The taking of risks is of the essence of all insurance. But the risks contemplated are honest ones, and not those which the insured may himself dishonestly cause. A temptation to use illegitimate means to obtain the amount of money for which an insurance policy is issued is undeniably the source of numerous and great losses on fire insurance policies, and the fact that human life may be lost by an incendiary fire is often insufficient to prevent such fires. If creditors and relatives, whom the insured dare not trust with his life, although they may have an insurable interest therein, are at liberty to take insurance upon it without his consent, it cannot be denied that in many cases the life of the insured would be less safe because of such insurance. For this reason it is impossible not to see that public policy condemns the insurance of a person's life without his consent. Public policy against mere wagers is of slight importance compared with the public policy against arson and murder."

In the case of Cheeves v. Anders, 87 Tex., 287, 28 S. W., 274, 275, 47 Am. St. Rep., 107, 109, the court said: "In some states it is held that an element of wagering likewise enters into such contracts, which has led, as we believe, to inconsistencies in the decisions in some of the courts. Our court has placed the inhibition against such contracts upon the higher and sounder ground that the public, independent of the consent or concurrence of the parties, has an interest that no inducement shall be offered to one man to take the life of another. Making this the test in every phase of such cases, there can be no inconsistency in our decisions, and the public good will be better guarded."

But whatever view may be taken as to the "higher and sounder ground" upon which to place "the inhibition against such contracts," the question of the applicability or nonapplicability to this case of the aforesaid statutes prescribing a limitation of 90 days, within which actions may be brought for money lost at gaming, seems to be settled by the Mss. opinion of the Supreme Court (speaking through

Mr. Justice Cook) in the case of Life and Casualty Insurance Company v. Mabel Smith, at Knoxville, November 30, 1934, wherein the court said:

"The statute, Shannon's Code, sections 3159-3161; Code of 1932, sections 7812-7814, which prescribe a limit of ninety days within which suit may be brought for money lost at gaming, cannot be extended to contracts of insurance unenforceable on behalf of those who pay the premiums and cannot collect the insurance because they have no insurable interest. Such contracts are void because contrary to public policy, and are inhibited because they would invite activity leading to the death of those insured for the benefit of another primarily interested in his or her early death."

It is said in the reply brief for plaintiff that "the alleged ninety-day statute was not raised in defendant's motion for a new trial as a ground of error upon the part of the trial judge." We do not so understand the record. It appears from the bill of exceptions that at the close of the evidence defendant's counsel stated to the court several "propositions" upon which he relied as a defense to plaintiff's action, and, among other things, he said:

"I want to raise the point, the Code provides in any form of gambling or betting that the loser must bring action to recover back what they have lost within ninety days."

To the "point" thus presented, the court responded:

"That is a nice question. You can raise that, but I am not going to let this insurance company do this, that is all, in conscience, equity and fair dealing as it occurs to me."

In its motion for a new trial thereafter filed, defendant included in the eighth ground thereof an assignment that the court erred in holding that the plaintiff is not barred from a recovery in this cause by the statutes of limitation applicable thereto.

In view of the manner in which his attention had been sharply challenged to the 90-day limitation on actions for money lost at gambling or betting, the learned trial judge could not have failed to understand that the eighth ground of the motion for a new trial was a complaint of his ruling that said 90-day statute was not applicable to plaintiff's action, as defendant had contended that it was one of "the statutes of limitation applicable" to the case.

But, upon the authority of Life & Casualty Insurance Company v. Mabel Smith, supra, defendant's eighth assignment of error, making the question that plaintiff's action was barred by the aforesaid statutory limitation of 90 days, is overruled.

It results that the judgment of the circuit court is affirmed, and judgment will be entered here in favor of Artie Cook and against Interstate Life & Accident Company and its surety for the sum of $190.28, with interest thereon from the date of the judgment below, and for the costs of the cause, including the costs of the appeal.

Crownover and DeWitt, JJ., concur.