IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

## FARMERS & MERCHANTS BANK, A Tennessee Corporation v. MIDWAY SUPPLY COMPANY, INC., A Tennessee Corporation

**An Appeal from the Circuit Court for Montgomery County**
**No. C12-724      The Honorable James E. Walton, Judge**

------------

**No. M1999-00147-COA-R3-CV - Decided April 7, 2000**

------------

This appeal involves a suit to recover money advanced by a construction lender to a building supply company to pay for building supplies which the bank mistakenly thought had been delivered to the bank's debtor.   Plaintiff, Farmers & Merchants Bank (Bank) sued defendant, Midway Supply Company, Inc., (Midway) to recover the sums advanced after Midway failed to deliver the supplies and applied the advanced funds to pay other accounts of the Bank's debtor.  From the judgment of the Circuit Court awarding judgment to Bank for the advanced funds less certain credit, Midway has appealed.

**Tenn. R. App. P 3; Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

Jerry W. Hamlin, Ashland City, Tennessee, for the appellant Farmers & Merchants Bank

Marks, Shell & Maness; Roger A. Maness, Clarksville, Tennessee, for the appellee, Midway Supply Co., Inc.

### OPINION

The defendant, Midway Supply Company, Inc., appeals the decision of the trial court awarding a judgment to the plaintiff, Farmers & Merchants Bank.

Bank's complaint, filed November 5, 1997, alleges that Bank made a construction loan to Bobby Wall for construction of a house on Lot 17, Riverplace and had a contemporaneous agreement to pay the invoice amount of the building materials directly to the supplier.  Bank avers that Midway generated invoice #52523, for building supplies in the amount of $20,055.77 and designated for Lot 17, Riverplace.  Attached to the complaint is a copy of the invoice marked Exhibit A.   The complaint alleges that Midway's issuance of an invoice for materials delivered to Lot 17,

Riverplace, and thereafter failing to ship the materials to that lot, while crediting the Bank's advance to other outstanding accounts, constitutes the tort of intentional and/or negligent misrepresentation and/or promissory fraud, and as a direct and proximate result, Bank has suffered damages in excess of $20,055.77.

Midway's answer denies that any agreement associated with the construction loan to Bobby Wall is binding on Midway. Midway avers that it took no action to cause Bank to rely on invoice # 52523 in issuing a check in the amount of $20,055.77 to Midway.

A nonjury trial was held on March 26, 1999. Sammy Stuard, president and chief operating officer of Farmers and Merchants Bank, testified that the Bank had a lending relationship with Bobby Wall, extending over a number of years, including both commercial and residential projects. In April of 1997, Bank received a request from Mr. Wall for a $20,000.00 draw against Lot 17. Mr. Stuard testified that he informed Mr. Wall that the only way that Bank would advance the funds would be if Bank had an invoice and could directly pay the supplier. Mr. Stuard required the invoice because at the time that Mr. Wall requested the $20,000.00 draw, the Bank had already advanced Mr. Wall about $88,000.00 on Lot 17, and there was only a foundation built on the property. Mr. Stuard informed Ms. Lee, the lending officer who maintained construction loans, of the requirement for an invoice on Mr. Wall's loan. Mr. Stuard testified that Bank sent Midway a check in the exact amount of the invoice and listed on the check that it was for Lot 17, Riverplace. Mr. Stuard testified that Midway called Bank after receiving the check to inquire into why the check was sent. In response Bank sent by facsimile a copy of the invoice. About three months after Bank sent the check to Midway, Mr. Stuard became aware that the materials had not been delivered, and upon questioning Bobby Wall was told that there was a possibility that Mr. Wall had been cut off at Midway, and that the money was applied to another one of Mr. Wall's accounts. Mr. Stuard testified that he was aware that Mr. Wall filed bankruptcy and that there was a foreclosure of Lot 17.

Sally Lee, testified on behalf of Bank that she was the officer that handled the loan on Lot 17. Ms. Lee testified that Bank received an invoice by facsimile dated April 4, 1997, for material for Lot 17 with account number WA009. The invoice was entered into evidence as Exhibit No. 1. Upon receiving the invoice she was instructed by Mr. Stuard to cut a check in the amount of the invoice payable to Midway. She mailed directly to Midway the Bank check No. 336339, dated April 29, 1997, payable to Midway Supply Company in the amount of $20,055.77, for account WA009, designated for Lot 17, Riverplace, and showing Bobby Wall as remitter. The check was entered as Exhibit No. 2. Upon receiving the check, the bookkeeper at Midway called Ms. Lee and informed her that Midway did not have an account set up for that address and requested a copy of the invoice, which Ms. Lee sent by facsimile. Ms. Lee had no further communication with the bookkeeper.

Doug Miller, an in-house salesman for Midway, testified that he created the invoice for Lot 17, Riverplace, including all the materials that were to be sent there at the request of Bobby Wall by converting a quote previously created on that property. Mr. Miller testified that about July 17, 1997, Bobby Wall called him and instructed that the materials on this invoice be shipped to Lot 17. Mr. Miller called the truss manufacturer and requested that they send the trusses directly to the property. Mr. Miller testified that he then requested that the yard foreman at Midway collect the rest

of the materials on the invoice and deliver them to Lot 17.  Mr. Miller then went on vacation, returned in early August, and discovered that the commission from this sale had not been included in his pay.  The yard foreman informed Miller that the order had not been shipped at the direction of Mr Reigle, owner of Midway, who had decided to cut off supplies to  Bobby Wall, due to the amount of money he owed Midway.  Mr. Miller testified that to his knowledge, nothing but the trusses were shipped to Lot 17, Riverplace.

At trial Claire Barnes, bookkeeper at Midway, explained that in Midway's bookkeeping system each location had its own account so that payments would be applied to the correct job. Ms. Barnes testified at her deposition that she received the check from Bank between April 29 and May 1, 1997, and that she wrote on the check account number WA009, which indicated Lot 17, Riverplace should receive the funds. However at trial she did not recall making that notation on the check.  Ms. Barnes testified that some of the funds were applied to Lot 17, but that there were funds left after paying off that account, which were applied to Wall's oldest accounts, according to Mr. Reigle's instructions.   At some point Sally Lee called her from the Bank and told her that she had applied the funds incorrectly.

Mr. Reigle, owner of Midway, testified on behalf of Midway.  He described Mr. Wall's account with Midway as "iffy",  and stated that sometimes Mr. Wall ran too far in debt for Midway to extend him credit.  Consequently Mr. Wall  would become a cash basis only customer.     Mr. Reigle testified that Mr. Wall did not mention Farmers and Merchants Bank at the time that he made this order, which was designated for later delivery.  Mr. Reigle stated that he had a conversation with Mr. Wall and told him that they were going to apply this check to his oldest outstanding account, which they did, and that he did not hear from the Bank for three or four months.  Mr. Reigle testified that on April 25, 1997, Mr. Wall cancelled the April 4, 1997  invoice for materials to be sent to Lot 17, Riverplace, and a credit memo was issued.   The cancellation was made before the check was received from the Bank, and had the Bank called Mr. Reigle before issuing the check, they would have become aware of the cancellation. Mr. Reigle testified that  Mr. Wall tried to place the same order for Lot 17 in July, at the time the trusses were ordered, however the rest of the order was not filled by Midway because Mr. Wall was on a cash only basis by July.

At the conclusion of the proof, the trial court found that the proof was really not in dispute and stated:

> The testimony of Mr. Reigle that this order was canceled by credit memo on the 25th of April, yet the check was not received until the 29th or so, if that set of circumstances is true, and I take it to be true, when that check was received and on the check is designated Bobby Wall, Lot 17, Riverplace, it is abundantly  clear to everyone involved in this proposition, not only to the bank but to everyone at Midway, they know what that means.  They knew what it meant. They knew that this was money designated for supplies dealing with Lot 17, Riverplace.

*    *    *    *    *    *

So when the check got there, the order for Lot 17 had been cancelled, and Midway applied those funds to the oldest accounts, that should not have been done. It was not proper under the circumstances. I don't think there's anything intended to be wrong. There's just everybody in business trying to do the best they could with a person that owed them a lot of money and likely not to pay. But at that time when the check was received, the bank knew what it was for. Midway knew what it was for, but it was not credited to that. The bank understood that they had issued a check to purchase materials for a specific job. And as I said, I'm certain that Midway understood that.

*    *    *    *    *    *

[I]t is abundantly clear to me that when Midway failed to tell the bank that the order had been canceled and yet took the money, that should not have been done and, under the facts and law, the Plaintiff is entitled to a verdict of $20,000.00, $20,055.77 less the billed amount of the truss[es].

A judgment in the amount of $16,898.93 was entered on April 15, 1999, in favor of the Bank.

Midway appeals and present three issues for review as stated in their brief:

1. Did the Court err in entering judgment in behalf of the original Plaintiffs without a showing of "fraudulent or negligent misrepresentation"?

2. Was the Plaintiff/Appellee Bank guilty of contributory negligence which would reduce their recovery or bar their recovery?

3. Did the Court err in determining that the transmitting Bank was in fact the owner of certain funds transferred by cashier's check to the Appellant?

We perceive the determative issue to be whether the court erred in entering a judgment in favor of the Bank.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. Tenn. R. App. P. 13(d).

In Midway's first issue, it asserts that the court erred because there was no showing of

-4-

fraudulent or negligent misrepresentation. We must disagree. The trial court found that Midway received Bank's check with full knowledge that the supply order had been unilaterally cancelled by Midway and that no delivery would be made. When the check was received, Midway failed to notify Bank of this development and retained the check for payment on Wall's other accounts. Midway knew that Bank was advancing the money strictly for purposes of Lot 17. The nondisclosure of the unilateral cancellation of the order on the part of Midway constituted a misrepresentation of fact. *See Justice v. Anderson County*, 955 S.W.2d 613 (Tenn. Ct. App. 1997). The record reveals that the money in controversy was paid by Bank under the mistaken belief that supplies had been or would be delivered to Lot 17, and Midway knew Bank was acting under this mistaken belief. The evidence does not preponderate against the trial court's finding in this respect.

In cases arising from mistake, mistake is defined by Gibson's Suits in Chancery § 986 (5th ed. 1956) as:

> [A]n act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, it must be mutual or fraudulent.
>
> The following mistakes of law and fact will be relieved against: ...11, Where money is paid by mistake;....
>
> In all cases of mistake in written instruments Courts of Equity will interfere only between the original parties, or those claiming under them in privity – such as personal representatives, heirs, devisees, legatees, assignees, judgment creditors or purchasers from any of them with notice of the facts.

Gibson's Suits in Chancery § 986 (5th ed. 1956).

> Mistake exists, in a legal sense, where a person acting upon some erroneous conviction, either of law or of fact, executes some instrument, or does some act, or omits to do some act, which, but for that erroneous conviction, he would not have executed, done or omitted. Hayne's Outlines of Equity 132; Pom. Eq. Jur., § 839.... Mistakes to be remediable in Equity must cause a loss to the party complaining which the other party ought not in reason and conscience to take advantage of.

*Id.* at n.3.

In *Neal v. Read*, 66 Tenn. 333 (1874) the Court said:

> "A court of equity has the jurisdiction to grant relief where an act is done or a contract made, under a

mistake or ignorance of a material fact, by the parties doing the act or making the contract. 1 Story Eq., sec. 140-1-2-3.

'"Money paid under a mistake of fact is recoverable both at law and in equity, unless it be clear that a party making the payment intended to waive all inquiry into the facts. It is not enough that he may have had the means of learning the truth, if he had chosen to make inquiry, the only limitation is that he must not waive all inquiry.' Kerr on Fraud and Mistake, 415; Peck's R., 1, 17, appendix; 2 Yer., 399."

*Id.* at 338; *see also In re: Rudd v. Bank of Troy,* 28 B.R. 591 (1983).

The Middle Section of the Tennessee Court of Appeal spoke of an action for money had and received in *Shelter Insurnace Companies v. Hann,* 921 S. W. 2d 194 (Tenn. Ct. App. 1995). In that case the insurer sought recovery of an overpayment to an insured in a settlement claim where there was a mistake by both parties' counsel regarding the settlement amount . On appeal the Court held that where a party to a settlement mistakenly pays more that the amount agreed to, he is entitled to recover the overpayment amount. *Id.* at 202. (Citing 15A C.J.S. Compromise and Settlement § 44, p. 273; *Snyder v. Johnson*, Tex. Civ. App. 1953, 256 S.W.2d 898). In so holding the *Shelter* Court stated "[s]uch a recovery is for 'money had and received' rather than 'unjust enrichment.' *Id.*

In *Steelman v. Ford Motor Credit Co.*, 911 S.W. 2d 720, (Tenn. Ct. App. 1995) this Court reviewed the trial court's decision for a directed verdict in favor of the defendant, Ford Motor Credit Co., from which Steelman appealed. Steelman had filed suit alleging breach of contract, and in the alternative, relied on the theory of promissory estoppel. *Id.* at 721. The facts of the case involve an alleged agreement by Ford Motor Credit Co. to reinstate financing to an automobile dealership in exchange for payments made by Steelman, as a buyer in interest. The *Steelman* Court recognized:

It is well settled in Tennessee that money paid upon consideration that subsequently fails may be recovered. *See Walker v. Walker*, 3 Tenn. Civ. App. 670, 686 (1913). An action for money had and received is based upon an implied assumpsit. It is properly cognizable in a court of law and may be maintained where one receives money or its equivalent under such circumstances that in equity and good conscience he ought not to retain and in justice and fairness it belongs to another. *Interstate Life & Accident Co. v. Cook*,19 Tenn. App. 290, 86 S.W.2d 887, 891 (1935).

*Id.* at 724. On appeal the *Steelman* Court remanded the case for the jury to resolve whether

defendant Ford Motor Credit Co. agreed to reinstate the floor-plan financing in exchange for Steelman's payment, as there was disputed testimony on the matter. *Id.*

In the instant case, the record reveals that Midway accepted the check from the Bank, who sent funds believing they would be applied to the purchase of supplies for Lot 17. The Bank would not have sent the funds, but for the Midway invoice supplied to them by Mr. Wall. The record further indicates that Midway accepted the funds and after clarification from the Bank, Midway's bookkeeper designated the check to be applied to Lot 17.

The payment by the Bank and the receipt by Midway indicates a mistaken understanding of the ultimate use of these funds influenced by Midway's failure to inform Bank of the non-delivery. As such, the payment is recoverable under an action for money had and received.

Therefore we find that the evidence does not preponderate against the trial court's finding that the Bank is entitled to a judgment in the amount of $20,055.77 less the cost of the trusses. The judgment is affirmed and the case is remanded to the trial court for such other proceedings as may be necessary. Costs of the appeal are assessed against the appellant, Midway Supply Company, Inc.