ROGERS, Circuit Judge,
dissenting.
Tennessee law clearly requires a refund of insurance premiums when no risk ever attached. The law is reflected in an 1891 Tennessee Supreme Court case that has never been overruled and that is consistent with general insurance law. James v. Insurance Co. of North America, 90 Tenn. 604, 18 S.W. 260, 260 (1891). The case and its principle are the primary argument of the plaintiffs on appeal, yet the case is only cited in the defendant’s brief for another proposition, which simply disregards the argument. As a federal court sitting in diversity, we are bound to follow applicable state law, in this case Tennessee law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Reversal is required by that law in this case.
The existence of at least a genuine issue of material fact about whether the vehicles at issue ever existed, or were ever insurable, is not disputed. If the vehicles did not exist or were uninsurable for other reasons, PIIC did not incur the risk contemplated by the insurance policy — i.e. that the cars would have depreciated below a certain value by the end of the lease. If no risk attached under a contract of insurance, no premium is earned, and under Tennessee law, premiums must be returned.
In James, the Supreme Court of Tennessee considered an insurance policy by which the insurer purported to assumed the risk of fire to certain lumber. James, 18 S.W. at 260. The policy contained a warranty stating that a space of 150 feet existed between the insured lumber and a nearby mill. Id. However, at the time the contract was entered, a space of 150 feet between the lumber and the mill did not exist. Id. Because the conditions necessary to make the contract effectual were never satisfied, the court found that no risk had attached to the insurer and accordingly, that the insured was entitled to a return of his premium. Id. The court explained that “[t]he contract of insurance is a conditional one. If no risk attaches, no premium, in the absence of fraud, is earned. When the risk never attached, and no risk was ever run, the premium is to be returned in case it has been paid, and the assured was guilty of no fraud. May on Ins. § 4.” Id.[3] James has been *249 followed by the Tennessee Court of Appeals in Interstate Life & Accident Co. v. Cook, 19 Tenn.App. 290, 86 S.W.2d 887, 890-91 (1935).
The James principle moreover appears fully consistent with general insurance law. Insurance is a contract whereby insurance premiums are paid to an insurer in return for the insurer’s assumption of the risk. See 28 Williston on Contracts § 70:255. However, “[w]here the risk has not attached or where no part of the interest insured is exposed to any of the perils insured against, the insurer, in the absence of any fault or fraud on the part of the insured, has no claim to the premium, and must return it.” 5 Couch on Ins. § 79:8; see also 28 Williston on Contracts § 70:255 (“if no risk attaches, the premium may be recovered”); 14 Williston on Contracts § 41:21 (“where the risk never attaches, the reason for requiring a surrender of the premium by insurer is apparent”). A comprehensive annotation published in 1940 cites cases from 23 American jurisdictions indicating that, absent fraud, premiums are to be returned where the insurance policy was void, even though the contract was not contrary to public policy. 129 A.L.R. 57, 60-63 (1940).
A relatively recent North Carolina case applied this law in circumstances very similar to those of the present case. Latta v. Farmers County Mutual Fire Ins. Co., 67 N.C.App. 494, 313 S.E.2d 214 (1984). In Latta, the plaintiff sought to recover premiums paid to an insurance company for crop insurance. No risk had ever attached under the policy because, at the time the plaintiff entered into the contract for insurance, the plaintiff had Federal Crop Insurance and, unbeknownst to the plaintiff, a clause in the insurance contract suspended coverage in the event the insured has or obtains Federal Crop Insurance. Id. at 215. The court found it inapposite that the defendant was at all times “ ‘ready, able and willing’ to perform, provided the plaintiff complied with the terms of the agreement,” because the insurance company was never at risk under the policy. The court stated that “[i]t is an established principle of insurance law that an insurer must return premiums where, without fault or fraud by the insured, no risk to the insurer ever attaches under the policy. Id. at 216. In such a case, the premiums have been paid upon a consideration which has failed.” Id. at 215-216. Therefore, the court found the plaintiff was entitled to a return of the premiums paid. Id. at 216.
It follows inexorably that BFM and LankOak are entitled under Tennessee law to a return of premiums paid because PIIC was never at risk under the insurance contract. The policy at issue in this case was for residual value insurance. Residual value insurance insures that, at the end of a long-term lease, the insured automobile will have a certain value. However, BFM and LandOak have established a genuine question of fact about whether the cars purportedly enrolled under the insurance policy ever existed or were leased in accordance with the eligibility requirements of the policy. If the cars never existed or did not meet the eligibility requirements of the policy, PIIC did not incur the risk contemplated by the parties — that the cars would be worth less than a specified amount — because the ears were never actually insurable. The district court and the majority opinion both agree that BFM and LankOak were innocent of any fraud in the situation.[4] The *250 grant of summary judgment should therefore be reversed.
It is true that James does not appear to have been cited by plaintiffs to the district court. The complaint did state, however, that “Defendant incurred no risk of loss,” J.A. 8, that the contract was “void initiate [sic],” and that plaintiffs are “entitled to a refund of [the] premiums.” J.A. 9. While these allegations were made in the context of “mutual mistake,” they nonetheless sufficiently plead a claim that the premiums should be returned on the James principle. See Smith v. City of Salem, Ohio, 378 F.3d 566, 577 (6th Cir.2004) (“legal theories of recovery need not be spelled out as long as the relevant issues are sufficiently implicated in the pleadings”). The summary judgment motion papers did not treat the question of whether, assuming plaintiffs had no knowledge that the automobiles did not exist, the premiums should be refunded. Instead, the summary judgment motions dealt with whether such knowledge should have been attributed to the plaintiffs. See majority opinion at fn. 1. With regard to the claim for refund of premiums, defendant’s memorandum in support of summary judgment was based entirely on the argument that “there was no mutual mistake because BFM Leasing knew, through their agent’s knowledge, that the cars did not exist at the time the policies were issued.” J.A. 35, 37-38. The district court ruled against defendant on this issue, but ruled in favor of defendant on another basis — one that, it turns out, was contrary to Tennessee law. Where summary judgment is granted on an unanticipated legal theory, it makes little sense to prevent a party from refuting the theory for the first time on appeal. See Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir.1989) (noting that the party opposing summary judgment must have “a reasonable opportunity to respond to all issues to be considered by the court”).
Moreover, the fact that plaintiffs on appeal cited some cases involving insurance contracts that were void as against public policy should not be construed to limit plaintiffs’ argument to cases regarding “insurable interest.” The James principle is broader: if no risk attached, premiums must be refunded, absent fraud. It does not matter whether risk did not attach because of the lack of insurable interest, as was argued in Vinson, or because it was impossible for the insured event to occur, as in this case and as in James.[5]
It should make no difference whether the James principle is based on a theory of lack of consideration, or on a theory of mutual mistake.[6] Whichever theory the principle is based on, it is controlling here. Even assuming, however, that plaintiffs are limited to a theory of mutual mistake, the plaintiffs should succeed. The plaintiffs have demonstrated a mutual mistake of the parties about a material fact underlying the contract — the existence or insurability of the cars. It is no answer that the parties were not, at the time they formed the contract, mistaken as to a present fact. Contract formation often involves a master agreement and subsequent *251 implementing agreements. See Gregg v. Transportation Workers of America International, 343 F.3d 833 (6th Cir.2003) (life insurance); Beynon v. Garden Grove Medical Group, 100 Cal.App.3d 698, 161 Cal.Rptr. 146 (Cal.Ct.App.1980) (health insurance). The master agreement in this case provided insurance only with respect to “Enrolled Vehicles,” and a vehicle was enrolled only following the submission of an Enrollment Form, in duplicate, along with a corresponding premium payment, plus acceptance and certification by the insurance company of the Enrollment Form. J.A. 67-68. Nothing about the James principle applies with less force when insurance contracts are structured in this way. At some point the mutual obligations of premium payment and risk undertaking ostensibly went into force (presumably when the Enrollment Form was accepted). At that point, with respect to cars that did not exist or were not otherwise insurable, no risk attached. At that point the James principle accordingly required a return of premiums.
Of course, public policy may not support the James rule. Insurance companies may incur unnecessary costs of administration, and may have to maintain unnecessary reserves or buy unnecessary reinsurance as a result of risk that the insurance companies reasonably believe to exist. Sound policy may suggest that this cost should be borne by the insured, by allowing the insurance company to keep the premiums, since the insured is in a better position than the insurance company to know whether the risk has attached. We are however nonetheless bound by Tennessee law, which is clearly to the contrary.
Accordingly, I respectfully dissent.

. The cited treatise explains as follows: [Insurance is] "a conditional contract; for when no risk attaches no premium is to be paid, or, if paid, must, in the absence of fraud, be returned to the assured. In point *249 of fact, the contract is to pay the premium on condition that the risk is run....” John Wilder May, The Law of Insurance § 4, at 3 — 4 (1873) (footnote omitted).

. Both the district court and the majority *250 opinion agree that the perpetrator of the fraud, Jeff Coppinger, was an independent contractor of BFM and LandOak. Accordingly, Coppinger’s fraud is not properly imputed to BFM and LandOak.

. Indeed, in a case arising out of Tennessee this court specifically read the James principle to be applicable where "the contract was not against law or public morals.” Georgia Home Ins. Co. v. Rosenfield, 95 F. 358, 363 (6th Cir.1899). See also Annotation, 129 A.L.R. 57, 60-63 (1940).

. It appears to be the former. See n. 1, supra.